No. 81-68

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

PETER KIAMAS, JR., and
DONNA MAE KIAMAS, husband and wife,

Plaintiff and Appellant,

vs.

MON-KOTA, INC., a Montana corporation,
LARRY LEWIS, ERVIN BIEBER, DUANE BIEBER,
and JEFF REIDLE,

Defendants and Respondents.

---

Appeal from: District Court of the Seventh Judicial District,
In and for the County of Richland
Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellant:

Thomas R. Halvorson, Sidney, Montana
Anderson, Edwards and Molloy, Billings, Montana
Richard W. Anderson argued, Billings, Montana

For Respondents:

Crowley, Haughey, Hanson, Toole and Dietrich,
Billings, Montana
L. Randall Bishop argued, Billings, Montana

---

Submitted: October 20, 1981

Decided: January 28, 1982

Filed: JAN 28 1982

Thomas J. Kearney
_____
                           Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs allege negligence on the part of Mon-Kota resulting in a head injury to plaintiff, Peter Kiamas, with severe physical and mental damage. Summary judgment was entered for defendant, Mon-Kota, in the District Court of Richland County. We affirm the District Court.

The central issue in this case is whether the District Court properly granted summary judgment in favor of Mon-Kota, impliedly holding that the "rescue doctrine" is not applicable to the facts of this case.

Plaintiffs are farmers in Richland County. In June of 1977, plaintiff, Peter Kiamas, Jr. (Kiamas), engaged Mon-Kota to fertilize his sugar beets by the application of top dressing. Kiamas had been leasing the land in question for a period of four or five years. Mon-Kota sent two employees to apply the top dressing by the use of two Mon-Kota John Deere tractors. The two employees did not initially realize that their John Deere tractor wheels were set for 26 inch rows rather than 24 inch rows as the beets were planted in the Kiamas field. Kiamas owned John Deere tractors of the same model as the Mon-Kota tractors, and Kiamas had changed the width adjustment on his own John Deere tractors many times. Kiamas drove out to his fields to see what was going on. He noticed that the beet tops in a number of rows were ragged and torn in appearance. One Mon-Kota tractor was stopped. Kiamas talked to the driver of that tractor, and together they halted the other tractor. There was no difficulty in stopping both of the Mon-Kota tractors. Kiamas and the Mon-Kota employees talked over the problem which was causing damage to the beet tops, and discovered that the Mon-Kota

tractor wheels were set for 26 inch rows instead of the 24 inch rows of the Kiamas field. As a result, they observed there was damage to the beets because the Mon-Kota tractors were driving over the tops of some of the beets. Kiamas instructed the drivers of the Mon-Kota tractors to "shut the tractors down" and that was done. The Mon-Kota drivers agreed that it was necessary to change the spacing on the tractor wheels before going further.

The Mon-Kota drivers did not have tools with which to change the spacing, and asked Kiamas if he had a jack and tools which they could use to change the spacing on the tractor wheels. Kiamas and the two drivers rode to the Kiamas farmhouse and picked up the jack, tools and equipment necessary to perform the wheel adjustment. When they returned to the Mon-Kota tractors, Kiamas injured his head while attempting to help with the wheel adjustments. In his deposition, Kiamas described how his injury occurred:

> "A. Well, we got back out to the field there. And -- well, like you say, the boys were pretty young, and I didn't know if they really knew what was going on or not. So I've -- I guess I volunteered to go along with them. And to make sure they were going -- going to do it right. And so we brought everything up to -- the blocks, the jack, the tools -- we all carried something over to the tractor. And I just -- I grabbed ahold of a wrench, and I started loosening the wheel. And that's when it slipped off -- slipped off the nut, and I cracked my head against the axle. That's basically what happened then."

The Mon-Kota drivers did not ask Kiamas to help in any way. Kiamas did not ask the Mon-Kota drivers if they knew how to change the wheel spacing. Kiamas explained that the wrench slipped off, and when asked what caused it to slip, he stated:

-3-

"A. I wish I knew. But it -- the wrench was in good shape. That's all I got to say. I mean, the wrench fit on there real good. So the only thing I could say is their nuts must have been rounded off or something. 'Cause I've done the same thing for 15 years and never had anything happen to me like that before."

In substance, Kiamas did not complain that the tools were in any way defective or that the tractor was in any way defective or that the Mon-Kota drivers did not do the right thing, but simply that the wheels were not set right and if Mon-Kota had the wheels set right all this would not have happened to him. Mon-Kota has conceded that it was Mon-Kota's fault that the tractors had the incorrect wheel spacing and that Mon-Kota, therefore, is properly responsible for any resulting damage to the beet crop or land of the plaintiffs. However, in this case we are concerned with Kiamas' alleged injuries as a result of the blow on the head, which he received while trying to loosen a wheelnut on the Mon-Kota tractor.

The facts disclose, without question, that the Mon-Kota tractors had incorrect wheel spacing, but also disclose that upon discovery of the incorrect spacing, the Mon-Kota drivers shut down the tractors so there was no further risk of injury to the Kiamas land or crops. The Mon-Kota drivers agreed with Kiamas that the wheel adjustment had to be changed before any further work would be done on the Kiamas land by the Mon-Kota tractors.

Our basic question is whether or not Kiamas can be classed as being on a "rescue" mission at the time of his personal injury. As pointed out by the plaintiffs, the theory of the rescue doctrine was stated 60 years ago by Justice Cardozo as follows:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes

them as normal. It places their effect within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. . . The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails but a wrongdoer also to the bystander who drags him from the path. . . The risk of rescue, if only it be not wanton, is borne of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had." Wagner v. International Ry. Co. (1921), 232 N.Y. 176, 133 N.E. 437.

William L. Prosser in his Handbook of the Law of Torts, Section 44, describes the rescue doctrine as follows:

"Upon the same basis, under the 'rescue doctrine,' efforts to protect the personal safety of another have been held not to supersede the liability for the original negligence which has endangered it. Whether or not the rescuer is to be regarded as 'foreseeable,' it has been recognized since the early case of the crowd rushing to assist the descending balloonist that he is nothing abnormal. 'The risk of rescue, if only it be not wanton, is borne of the occasion. The emergency begets the man.' . . .

"Although there has been some disagreement, the great majority of the courts now apply the same rule to one who tries to rescue the property of another, even when he is under no duty to do so, and even though the property involved is that of the defendant. . ." Prosser, Law of Torts §44 (4th ed. 1971).

It may be noted that both Justice Cardozo and Professor Prosser emphasize that danger of injury or damage to person or property is the element which invites rescue. "The emergency begets the man."

Plaintiffs suggest that Ekwortzel v. Parker (1971), 156 Mont. 477, 482 P.2d 559, is a case in which this Court applied the "rescue doctrine" without actually saying so. That case is distinguishable. The defendant there kept one quite obstreperous mule which had escaped the defendant's enclosure and entered upon the plaintiff's land where the mule had been for a number of days, causing significant

problems with livestock. While plaintiff was attempting to round up the mule, his horse fell, breaking plaintiff's leg. The distinction between the two cases is the need for action, the "emergency" mentioned by Cardozo and Prosser previously. Ekwortzel acted to get the mule out of the way so that he could properly move his own livestock. Here, Kiamas was not required to act either to meet an emergency or otherwise, because the tractors were stopped and there was no further risk of damage to his growing crops and fields.

Plaintiffs contend that summary judgment was not appropriate because there was an issue which should have been submitted to the jury as to whether or not the defendants' negligence and breach of duty was the cause of the injury to Kiamas. With regard to the entry of summary judgment where a plaintiff fails to establish a proximate causal connection or other material element in the negligence action, this Court in Scott v. Robson (1979), ____ Mont. ____, 597 P.2d 1150, 1154, 36 St.Rep. 1273, 1278, quoted from Pickett v. Kyger (1968), 151 Mont. 87, 100, 439 P.2d 57, 63, as follows:

> "'It is hornbook law requiring no citation of authority that the material elements that the plaintiff must prove in order to prevail in a damage action of this kind are:
>
> "'(1)  A duty owing from defendant to plaintiff;
>
> "'(2)  A breach of that duty by defendant;
>
> "'(3)  Constituting proximate cause of;
>
> "'(4)  Injuries and damages to plaintiff.
>
> "'Plaintiff must introduce evidence proving or tending to prove each of these material elements in order to be entitled to have his case submitted to the jury. In the instant case plaintiff's evidence, viewed most favorably to plaintiff, tends to establish the duty, breach, injury, and damages. But there is a total absence of any evidence tending to establish a proximate causal connection between the breach[ed] . . . duty and plaintiff's injuries and damages.'

-6-

> "In _Pickett_ this Court directed summary judg-
> ment in favor of the defendant as a result
> of the plaintiff's failure to establish a proxi-
> mate causal connection."

Mon-Kota contends that plaintiffs have failed to establish a causal connection between the negligence of Mon-Kota and the personal injury to Kiamas. Kiamas quotes from Restatement (Second) of Torts, Section 290 (1965), as a basis for a conclusion that the defendant is required to know that Kiamas could be expected to act in this manner. He quotes from Comment 1, which in pertinent part states:

> "1. Knowledge that others will act to prevent
> harm. The actor as a reasonable man should
> realize that another whose person or goods he
> intentionally or negligently puts in peril, is
> both likely and privileged to act in its defense,
> and is also required to realize that in so do-
> ing the other may not act with perfect propriety,
> particularly where the peril is sudden and creates
> an emergency in which immediate action is re-
> quired. . . So too, the actor must recognize
> the tendency of human beings to expose them-
> selves to peril to protect not only the life
> and limb but even the property of third persons
> . . ."

As stated in the first sentence, the key element is that the defendant is charged with "knowledge that others will act to prevent harm." In the present case there was no action of any type by Kiamas to prevent harm. The possibility of harm was eliminated by Mon-Kota stopping its tractors and the drivers' agreement to change the wheel spacing so there would be no further damage to the Kiamas crops or lands. Not only is there a total absence of an emergency described above, there is a total absence of a need for action to prevent harm.

Both parties rely heavily in their arguments on the Restatement (Second) of Torts (1965). With regard to the basic element of negligent conduct as cause of harm to another, Section 431 states:

> "The actor's negligent conduct is a legal cause of harm to another if
>
> "(a)  <u>His</u> <u>conduct</u> <u>is</u> <u>a</u> <u>substantial</u> <u>factor</u> <u>in</u> <u>bringing</u> <u>about</u> <u>the</u> <u>harm</u>, and
>
> "(b)  There is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." (Underscoring added.)

In discussing the application of Section 431, the Comment emphasizes the following:

> "In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. . . The negligence must also be a substantial factor in bringing about the plaintiff's harm.  The word 'substantial' is used to denote the fact that the defendant's conduct has such an affect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense. . ."

The Comment is particularly applicable to the present case. It is not enough that Kiamas would not have suffered a head injury had Mon-Kota not been negligent in having the wrong spacing on its tractors.  In addition, any negligence of Mon-Kota also must have been "a substantial factor" in causing the injury.  Mon-Kota had stopped its tractors and was in the process of correcting the wheel adjustment so there would be no further harm to plaintiffs' land, and no need for any action on the part of Kiamas.  This suggests that plaintiffs have failed to show that the conduct of Mon-Kota was such as to lead reasonable men to regard it as a cause of the personal injury.

Restatement (Second) of Torts, Section 445 (1965), is particularly relied upon by the plaintiffs in their arguments. We find that a careful analysis of that section is decisive. Section 445 states:

> "If the actor's negligent conduct threatens
> harm to another's person, land, or chattels,
> the normal efforts of the other or a third
> person to avert the threatened harm are not
> a superseding cause of harm resulting from
> such efforts."

If we reword the section to apply to the present fact situation,
it would read substantially as follows:

> If Mon-Kota's negligent conduct threatens harm
> to Kiamas land, the normal efforts of Kiamas
> to avert the threatened harm are not a super-
> seding cause.

The actions of Kiamas became a superseding cause unless he
proved that his actions were a normal effort to "avert the
threatened harm" to his crops and land. When Mon-Kota
halted the tractors and proceeded to change the wheel adjustment,
there was no longer any action required by Kiamas to avert a
threatened harm. Our conclusion is that the actions of
Kiamas do not fall within the provisions of the rescue
doctrine as described in Restatement Section 445, with the
result that the Kiamas action was a superseding cause for
which Mon-Kota and the other defendants were not responsible.

We affirm the summary judgment of the District Court
for the defendants.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

-9-

Mr. Justice John C. Sheehy concurring:

I concur in the result. The "rescue doctrine," though raised by plaintiff, is entirely irrelevant to his claim. He applied a wrench to loosen a nut, the wrench slipped and plaintiff was injured. Beyond those facts, we have nothing to show a duty of defendants toward plaintiff, nor a breach of that duty and resulting harm to plaintiff. On the basis simply that plaintiff fails to state a claim in tort, the summary judgment is proper.

John C. Sheehy

Mr. Justice Daniel J. Shea concurring:

I agree that summary judgment was properly granted. The negligence of Mon-Kota stopped when the tractors were shut down and were no longer doing damage to the crops and land. Had the plaintiff been injured while running in the fields attempting to get the Mon-Kota employees to shut down the tractors, I have no doubt that the rescue doctrine would apply and a factual question would remain for the jury. But here the plaintiff seeks to recover for injuries sustained after the negligent acts of the Mon-Kota employees had come to a standstill, and where there was absolutely no need for the plaintiff to do anything further. He acted as a volunteer in undertaking to change the wheel spacing on the Mon-Kota tractors, and he has alleged no negligence of the Mon-Kota employees after the tractors were shut down. Whatever injuries he received were not proximately caused by the negligence of Mon-Kota or its employees.

Justice

I concur with the foregoing.

Justice

-11-