No. 93-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

RICHARD C. BOSSARD,

    Plaintiff and Appellant,

    -v-

JERALD J. JOHNSON,

    Defendant and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    John E. Bohyer, Phillips & Williams, Missoula,
    Montana

    For Respondent:

    Bradley J. Luck, Garlington, Lohn & Robinson,
    Missoula, Montana

Submitted on Briefs: March 17, 1994

Decided: June 2, 1994

Filed:

CLERK OF SUPREME COURT
STATE OF MONTANA

JUN 2 1994

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a grant of summary judgment to defendant by the Fourth Judicial District Court, Missoula County. We affirm.

We consider the following issue on appeal:

Did the District Court err by granting summary judgment to defendant and not granting partial summary judgment to plaintiff on the issue of liability?

Plaintiff Richard Bossard (Bossard) and Jerald Johnson (Johnson) were friends who had been in the construction business together. Bossard is also a realtor who sold Johnson the property which is involved in this action.

The property bought by Johnson contains a house and a storage shed. On the day of the accident, Johnson and Bossard were unloading 80 to 100 pound modified stove boards and placing them in the shed.

When the men were finished with this task, they exited the front sliding door and shut it. During this closing, the roller on one end of the door came out of its U-shaped track because there were no "stops" at the end of its tracking slot. Bossard testified by deposition that when the door rolled off the end of the track, that end of the door dropped to the ground. The roller for the other end of the door remained in the track.

Neither Bossard nor Johnson were injured by the door's fall. In his deposition Bossard testified that he alone may have lifted the door or that he and Johnson may have lifted the door in order

2

to place it back on the track. Bossard testified that the initial attempt to lift the door was not successful. During the second successful lift of the door which placed the roller back in its slot, he testified he felt pain in his arm. Bossard later learned that the pain was caused by a ruptured right biceps tendon. After the injury an embolism formed which caused serious impairment to the use of his right arm.

Bossard filed this negligence action on March 23, 1993, seeking to recover damages for his injuries. Johnson filed a motion for summary judgment on July 1, 1993. On July 12, 1993, Bossard filed a cross-motion for partial summary judgment on the issue of Johnson's liability.

The District Court entered its opinion and order on September 10, 1993, granting Johnson's motion for summary judgment and denying Bossard's motion for partial summary judgment. Bossard appeals the court's grant of summary judgment to Johnson and its denial of his own motion for partial summary judgment.

Did the District Court err by granting summary judgment to defendant and not granting partial summary judgment to plaintiff on the issue of liability?

In order for summary judgment to issue, the movant must demonstrate there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. If movant meets this burden, the burden then shifts to the party opposing summary judgment to demonstrate genuine issue of material fact. Richland National Bank and Trust v. Swenson (1991),

3

249 Mont. 410, 816 P.2d 1045.

Bossard contends that he was injured on Johnson's property and that Johnson is liable for those injuries. Bossard testified that after the door slipped from the track, it came to rest on the ground in a precarious position. While Bossard does not identify any person or property which was in danger of injury, he contends that the "rescue doctrine" allowed him to place the door back on its track, and then to recover from Johnson because he was injured trying to remove the danger. Bossard also argues that Johnson knew about the lack of "stops" on the track, but negligently failed to put in stops or to warn him of the danger. Finally, Bossard contends that because of the contradiction in statements when Johnson's first affidavit is compared to his second affidavit, there is a question of material fact which precludes summary judgment.

Johnson responds by contending that the "rescue doctrine" is not applicable to the facts in this case. Johnson further contends that he had no legal duty to Bossard and that a negligence action is inappropriate. He contends that as a landowner, he had no duty to warn Bossard about the door because the door was not a hidden or lurking danger. In addition Johnson contends that the action of lifting the door back on its track does not represent a foreseeable danger as each of the men had just finished lifting objects of the same weight. Finally Johnson contends there is no issue of material fact when his two affidavits are compared.

We will first discuss the "rescue doctrine." In Kiamas v.

4

Mon-Kota (1982), 196 Mont. 357, 639 P.2d 1155, this Court emphasized the necessity of an actual danger of injury to person or property and a definite emergency before the rescue doctrine could be applied, stating:

> It may be noted that both Justice Cardozo and Professor Prosser emphasize that danger of injury or damage to person or property is the element which invites rescue. "The emergency begets the man."

Kiamas, 196 Mont. at 361, 639 P.2d at 1158. In Kiamas, the plaintiff was injured while attempting to help the Mon-Kota drivers change the wheel spacing on its tractors. This Court further stated the following with regard to the absence of an emergency:

> The possibility of harm was eliminated by Mon-Kota stopping its tractors and the drivers' agreement to change the wheel spacing so there would be no further damage to the Kiamas crops or lands. Not only is there an absence of an emergency described above, there is a total absence of need for action to prevent harm.

Kiamas, 196 Mont. at 363, 639 P.2d at 1159. In the present case, the District Court stated:

> In this instance, the door came off its track, and one end rested on the ground. No immediate danger resulted from the door coming off its track.

As the door sat, it did not represent a threat of injury to either of the men present nor to the property itself. As in Kiamas, we here conclude that no danger of injury or damage to person or property existed. We conclude that because no emergency existed, there was no need for action to prevent harm so the rescue doctrine is not applicable to the facts of the present case.

With regard to Bossard's claim of negligence, he argues that because he was injured on Johnson's property, Johnson is

responsible for his injury. Landowners are not insurers against all accidents and injuries to others on their land. Buskirk v. Nelson (1991), 250 Mont. 92, 818 P.2d 375. A landowner has a duty to those on his property to use ordinary care under the circumstances. Limberhand v. Big Ditch Company (1985), 218 Mont. 132, 706 P.2d 491. In order to recover from the landowner, the injured person must prove that he was injured due to the negligent act or omission of the landowner.

The District Court determined that it had not been presented with evidence which demonstrated that any act or omission by Johnson was the proximate cause of Bossard's injury.

In Bickler v. Racquet Club Heights Associates (1993), 258 Mont. 19, 850 P.2d 967, we defined proximate cause as follows:

> In Montana, proximate cause is an act or omission which, "in a natural and continuous sequence, unbroken by any new, independent cause, produces injury, and without which the injury would not have occurred." . . . The phrase "without which the injury would not have occurred" incorporates the "but for" test.

Bickler, 258 Mont. at 23, 850 P.2d at 970.

Bossard contends that Johnson did not fix the stops or warn of the lack of stops and that his failure to act or warn was the proximate cause of Bossard's injury. Johnson agrees that he did not fix the stops and that he did not tell Bossard of the lack of stops. However, Johnson contends that Bossard's injuries flow from Bossard's own decision to lift the door back on its track.

In considering this aspect, the District Court stated:

> While the Defendant [Johnson] knew that the door could come of [off] the track, it was not reasonably foreseeable that the Plaintiff [Bossard] would injure

6

himself by attempting to secure the door. There is a missing link in the chain of causation as presented by the Plaintiff. The falling door did not directly precipitate the Plaintiff's injuries. It was the Plaintiff's actions which directly resulted in his injuries, . . .

Here the event which produced the injury was Bossard's attempt to lift the door back on its track. Bossard testified that he did not believe such an attempt would injure him. Further, the record is clear that Johnson did not foresee that Bossard's attempts would end in any injury as Bossard had just completed the successful move of objects as heavy as the door.

We conclude that Bossard's conduct in lifting the door constituted an independent cause, which broke the continuous sequence required under Bickler to establish proximate cause. We further conclude that because of the absence of proximate cause, Bossard is unable to prove that Johnson was negligent.

Bossard finally contends that the contradictory statements as to the necessity of replacing the door as set forth in Johnson's two affidavits preclude summary judgment because the affidavits create an issue of material fact. We note here that Bossard's deposition testimony establishes that he is not sure whether Johnson helped him with the door or not. This inability to state whether both men or only Bossard lifted the door is mirrored in Johnson's conflicting affidavits. The first affidavit states that both men helped put the door back, Johnson's second affidavit says only Bossard made the attempt. Yet, this conflict of facts is not important.

The dissent characterizes the major question posed by the two

7

affidavits as one involving the need to replace the door. Whether a need existed is only material to resolution of whether reliance can be placed on the rescue doctrine. While the dissent argues that it is a material question of fact as to whether both men agreed that the door had to be replaced, the only material question is whether an emergency existed. The evidence from both men is consistent that no one present at the scene was threatened with injury.

What is in conflict is whether Johnson believed a threat existed to the "next person who came upon the door." The rescue doctrine is inappropriate if the only person with any potential to be injured is a possible unknown future person. The "next person to come upon the door"--may never come along. The rescue doctrine is not rooted in future possibilities, but in an immediate need for action. If the facts portrayed consistently by both men showed that Bossard's actions were required to alleviate the threat of harm, then the rescue doctrine would be applicable. Both men presented consistent evidence that neither of them was injured by the falling door and that no one else was present. Both men also testified consistently that neither of them believed that replacing the door would harm them. These are the facts that are material and they are not in dispute.

The dissent states that Johnson's shift in his second affidavit away from his belief in the need to protect some future person presents a material question of fact for the trier of fact because it puts the emergency nature of the door replacement at

8

issue. However, what is not certain by reading the two affidavits concerns only Johnson's wavering "belief" that some person in the future may be injured. The question of Johnson's "belief" as to the possibility of harm to a person not present at the scene is not material to resolution of whether Johnson was negligent or whether the rescue doctrine applied. A material fact must contribute to a resolution of the case. State v. DeMers (1981), 628 P.2d 676, 38 St.Rep. 877.

The only question that is material here is whether something Johnson did caused damage or, in the case of application of the rescue doctrine, whether something Johnson did caused an emergency situation that Bossard was forced to attempt to eliminate. Johnson's beliefs concerning a future possibility of harm to someone who might never show up do not represent anything that is material to resolution of these questions.

We hold that the District Court did not err in granting summary judgment to defendant and in refusing to grant partial summary judgment to plaintiff.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
John Conway Harrison

9

_Karla M. Gray_

_____

_____

_____

Justices

I respectfully dissent. This case should not be decided on summary judgment; there are material disputed facts that should be resolved by a jury.

In a personal injury case we must start from the basic premise that issues of negligence are not ordinarily susceptible to summary adjudication, but are better determined at trial. Dillard v. Doe (1992), 251 Mont. 379, 382, 824 P.2d 1016, 1018. It is only when reasonable minds could reach but one conclusion that questions of fact may be determined as a matter of law. Brohman v. State (1988), 230 Mont. 198, 202, 749 P.2d 67, 70.

In the instant case we need go no further in determining that there are material facts at issue than to Johnson's affidavits. While our opinion focuses on the conflict in the affidavits regarding whether Bossard lifted the door alone or with the assistance of Johnson, that is not the major difference at all. The substantive difference between the two affidavits derives from the fact that Johnson changes his whole story about the imminency of the peril from his first affidavit to his second. In his December 10, 1992, affidavit, Johnson states at paragraph 10:

> At the time the sliding door fell off the track and Richard was injured, we both felt it was necessary to replace the door on the track. After the door fell off the track, it was not in a steady position, and we were both concerned that if we left the door as it sat, there would be a risk of injury to the next person who came upon the door and tried to move it. We were also concerned that leaving the door sitting on the ground with only one wheel sitting in the track might further damage the door, the track or the rollers. For those reasons, Richard and I attempted to replace the door on the track.

In his June 29, 1993, affidavit, Johnson had a much different

11

view of those crucial facts, however. He states at paragraph 5:

> On May 25, 1991, after one end of the door slipped off the track there was no immediate need to replace it upon the track. It certainly needed to be replaced in due time to avoid the possible bending of the track or the very remote possibility of it falling. There was no emergency need to act in replacing the door.

In the two affidavits Johnson's position goes from concern that the door, hanging from one roller in an unsteady position, would injure the next person who tried to move it, to no more concern than that at some indeterminate point in the future, because of a "remote possibility" of the door falling, that it would have to be replaced. In his first affidavit the door would likely injure the next person who came in contact with it; in his second affidavit the door could, with little risk, hang on one roller until Johnson got around to fixing it. That is the major difference.

Bossard's deposition testimony clearly supports the statements in Johnson's first affidavit -- i.e. that the door was not in a safe position and that it should not be left hanging from the one roller:

> Q:    (Attorney Luck) What do you mean when you say you thought in your own mind it was precarious?
>
> A:    (Bossard)  I thought it could fall off and the door could be torn, damaged, the runner might get damaged if a breeze, a wind, or if somebody came by and it fell on them it could kill them or hurt them.

While the rescue doctrine may not be rooted in "future possibilities," a fair reading of Johnson's first affidavit and Bossard's deposition testimony clearly indicate that both men were concerned that the door was not stable and could likely fall and

12

seriously injure the next person who came in contact with it. Our opinion points out that the "'next person to come along' may never come along." Aside from the absurdity of that statement, it was for the jury to make that determination.

It is undisputed that Johnson knew about the defective door, that Bossard did not, that the defect was hidden and that Johnson failed to warn Bossard that the door would fall off its track if it were pushed too far.

Bossard filed his complaint on the theory that he was injured because Johnson negligently maintained his property by failing to repair a door known by Johnson to be defective, by failing to warn Bossard of that defect known only to Johnson, thereby creating a danger to persons and property which invited the "rescue" by Bossard when the door fell off its track. Johnson's first affidavit and Bossard's deposition testimony support that theory, and Bossard argues that he was entitled to partial summary judgment on the issue of liability on that basis, without more.

Even disregarding Johnson's second, contradictory affidavit, given Johnson's first affidavit and Bossard's deposition testimony I believe that there remain issues of fact to be decided by the jury concerning the urgency of the situation and the imminency of the peril after the door fell and as to the application of the "rescue doctrine" to this case.

Furthermore, I disagree with the Court's conclusion that Johnson had no duty to warn Bossard. We cite to Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 706 P.2d 491, for the rule that a

13

landowner has a duty to those on his property to use ordinary care under the circumstances, regardless of whether the injured party is a guest, invitee or trespasser. We also pointed out in that case that where a condition on the landowner's property presents "... a peculiar danger in the nature of hidden peril or trap for the unwary ...," a fact issue arises for the jury and that,

> [i]t would follow that the court would then instruct the jury that the duty of providing warnings ... for the unwary would be measured by the landowner's duty to exercise "ordinary care or skill in the management of his property" pursuant to section 27-1-701, MCA.

Limberhand, 706 P.2d at 497.

Here it is undisputed that Johnson was aware of the defective condition of the door, that he needed to repair it, that it would fall off its track if pushed too far, and that the defect was not apparent. It is also undisputed that Bossard was unaware of that danger and that Johnson did nothing to make Bossard aware of the condition of the door. Under the facts here and our prior case law, I cannot conclude that Johnson had no duty to Bossard. To the contrary, Johnson had a duty to use ordinary care in maintaining his property, and he had a duty to warn Bossard of the dangerous condition of the door. Whether those duties were breached by Johnson in this case was for the jury to decide.

Finally, I disagree with our conclusion that Johnson's conduct was not the proximate cause of Bossard's injury. Suffice it to say that it is axiomatic that questions of causation in a negligence case are for the finder of fact to decide. See for example, Sizemore v. Montana Power Company (1990), 246 Mont. 37, 803 P.2d

14

629, and Thayer v. Hicks (1990), 243 Mont. 138, 793 P.2d 784.

Accordingly, I would reverse the grant of summary judgment for Johnson and would remand this case for trial.

_____
Justice

Justice William E. Hunt, Sr. and Justice Terry N. Trieweiler concur in the foregoing dissent.

_____
_____
Justices

15

June 2, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John E. Bohyer, Esq.
Phillips & Williams, P.C.
Ste. 104, Central Square, 201 W. Main
Missoula, MT  59802

Bradley J. Luck, Esq.
Garlington, Lohn & Robinson
P.O. Box 7909, 199 W. Pine
Missoula, MT  59807-7909

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy