No. 97-444

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 194

WILLIAM B. SCHMIDT,

Plaintiff and Appellant,

v.

WASHINGTON CONTRACTORS GROUP, INC.

and ALPINE CONSTRUCTION, INC.,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

F. R. Randy Harrison; Harrison Law Office, Missoula, Montana

For Respondents:

Paul C. Meismer; Carey, Meismer & McKeon, Missoula, Montana

(for Washington Contractors Group, Inc.)

Lynn M. Grant; Quane, Smith, Howard & Hull, Missoula, Montana

(for Alpine Construction, Inc.)

No

Submitted on Briefs: February 2, 1998

Decided: August 11, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ **Plaintiff William Schmidt (Schmidt) was injured during a single vehicle motorcycle accident that occurred on an Interstate 90 ramp under construction at the DeSmet Interchange near Missoula, Montana. Schmidt filed a complaint in negligence in the Fourth Judicial District Court, Missoula County, against Defendant Washington Contractors Group, Inc. (Washington), the general contractor for the "DeSmet Interchange Project," and Defendant Alpine Construction, Inc. (Alpine), the subcontractor hired to control traffic during the construction project. The District Court subsequently entered an opinion and order granting summary judgment in favor of Defendants Washington and Alpine. From this opinion and order, Schmidt appeals. We reverse and remand for further proceedings consistent with this Opinion.**

¶ **The sole issue raised on appeal is whether the District Court erred by granting Washington and Alpine summary judgment.**

## FACTUAL AND PROCEDURAL BACKGROUND

¶ Highway 93 and Interstate 90 intersect near Missoula, Montana, at a location called the DeSmet Interchange. The Montana Department of Transportation contracted with Washington to work as the general contractor for the DeSmet Interchange Project (the Project). As the general contractor, Washington was responsible for improving the overpass, on-ramps and off-ramps at the DeSmet Interchange during the spring and summer of 1995. Alpine, hired as subcontractor on the Project, was responsible for controlling traffic during the construction project which included posting signs. On August 21, 1995, Schmidt was injured when he crashed his motorcycle while descending a temporary entrance ramp to Interstate 90 at the DeSmet Interchange. While the top-half of this temporary ramp was paved, the bottom-half was only graveled. Additionally, where the ramp interfaced with Interstate 90, an elevation difference of approximately six to eight inches existed and the ramp was repaired almost daily due to wear and tear. Schmidt's accident occurred at the bottom of the temporary ramp where the graveled portion interfaced with the paved interstate and the elevation differential existed.

¶ On May 30, 1996, Schmidt filed a complaint against both Washington and Alpine for personal injuries resulting from his accident and requested a jury trial in the Fourth Judicial District Court, Missoula County. Schmidt alleged that Alpine was negligent in failing to adequately warn motorists of the elevation differential on the ramp and that Washington was negligent in failing to eliminate or mitigate the danger posed by the elevation differential. Additionally, Schmidt alleged that pursuant to agency law, Washington, as principal to its agent, Alpine, was responsible for Alpine's negligence. Schmidt sought compensatory damages for his personal injuries and punitive damages for Washington's and Alpine's alleged gross negligence. The parties engaged in discovery resulting in a number of affidavits, depositions and answers to interrogatories.

¶ Prior to trial, Washington and Alpine each filed a motion *in limine* to exclude evidence of motorcycle accidents on the ramp other than Schmidt's and a motion for summary judgment on Schmidt's entire claim. Additionally, Washington filed a motion for partial summary judgment on the issue of punitive damages. On June 10, 1997, after briefing and oral argument, the District Court entered an opinion and order granting Washington and Alpine summary judgment, vacating the jury trial

and dismissing Schmidt's complaint with prejudice. Explaining that the grant of summary judgment was dispositive, the court declined to address the remaining pending motions. From this opinion and order, Schmidt appeals.

## STANDARD OF REVIEW

¶ Under Rule 56(c), M.R.Civ.P., summary judgment is proper only when the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. Four elements comprise a negligence cause of action: (1) duty; (2) breach of duty; (3) causation; and (4) damages. *Wiley v. City of Glendive* (1995), 272 Mont. 213, 217, 900 P.2d 310, 312. Because issues of negligence ordinarily involve questions of fact, they are generally not susceptible to summary judgment and are properly left for a determination by the trier of fact at trial. *Kolar v. Bergo* (1996), 280 Mont. 262, 266, 929 P.2d 867, 869. Therefore, only when reasonable minds could not differ may questions of fact be determined as a matter of law. *Wiley*, 272 Mont. at 216, 900 P.2d at 312.

¶ The initial burden is on the moving party to demonstrate "a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." *Kolar,* 280 Mont. at 266, 929 P.2d at 869. Once the moving party meets this burden, the burden shifts to the non-moving party to establish otherwise. *Wiley*, 272 Mont. at 216, 900 P.2d at 312. We review a district court's grant of summary judgment *de novo*, using the same criteria and evaluation as did the district court pursuant to Rule 56(c), M.R.Civ.P. *Wiley,* 272 Mont. at 216, 900 P.2d at 312.

## DISCUSSION

¶ Did the District Court err by granting Washington and Alpine summary judgment?

¶ The District Court granted Washington and Alpine summary judgment stating that "[s]ignificant uncontroverted evidence supports the theory that neither Defendant breached its standard of care." The court explained:

> Summary judgment in favor of both Washington and Alpine is appropriate.

> Both Defendants have brought forth credible evidence that they met the applicable standard of care and that if they had a duty to warn, they met that duty. Schmidt cannot bring forth any material evidence in response because he has neither a highway [accident] reconstruction expert or a signage expert.

Additionally, the court also explained that Schmidt failed to introduce evidence disputing the location of warning signs on the temporary ramp as indicated by Alpine's affidavit and logs.

¶ **Schmidt argues that several genuine issues of material fact exist, and, therefore, the District Court erred in granting Washington and Alpine summary judgment. First, Schmidt argues that a material question of fact exists regarding the placement of a "BUMP" warning sign as well as the placement of other traffic signs on the temporary ramp at the time of his accident, and, therefore, whether he was given adequate warning of the danger posed by the elevation differential. Schmidt asserts that Robert Johnson, a witness who worked as the project supervisor for the Montana Department of Transportation, executed two inconsistent affidavits concerning the location of a "BUMP" sign on the ramp. Additionally, he contends that Alpine's discovery responses concerning the permanency of the "BUMP" sign were inconsistent with its own sign log book. Furthermore, Schmidt maintains that Alpine's description of the placement of other traffic signs on the ramp differs from Johnson's sketch depicting the placement of traffic signs on the ramp which he made while observing the accident site on August 22, 1995, the day after Schmidt's accident.**

¶ **Second, Schmidt argues that a material question of fact exists concerning whether Washington had notice of the unreasonably dangerous condition of the temporary ramp, and, consequently, whether Washington failed to properly maintain the ramp. Schmidt contends that evidence of three motorcycle accidents, other than his own, within a 72-hour period, raises a genuine issue of fact concerning Washington's knowledge of the unreasonably dangerous condition of the temporary ramp. Furthermore, Schmidt asserts his lack of an accident reconstruction expert is harmless given that his two expert witnesses in motorcycle dynamics were prepared to testify as to the unique problems encountered by motorcycles crossing raised surfaces. Finally, he maintains that he did not need a signage expert to explain common sense ways of preventing accidents.**

¶ **Washington and Alpine respond that the District Court properly granted summary**

judgment in their favor because no genuine issues of material fact exist and they were entitled to summary judgment as a matter of law. First, Alpine argues that no factual dispute exists concerning the placement of the "BUMP" warning sign because Johnson's second affidavit clarified his first affidavit. Furthermore, Alpine contends that even if the discrepancy raises a factual issue, it is immaterial. Alpine explains that due to Schmidt's slow speed on the temporary ramp, even if the "BUMP" sign was placed only 200 feet from the interstate, as Johnson estimated in his first affidavit, this placement still satisfied the guidelines set forth in the Manual of Uniform Traffic Control Devices (MUTCD) and thereby satisfied its duty. Moreover, Alpine argues that the inconsistences between its discovery responses and its log book concerning whether the "BUMP" sign was permanent or temporary are immaterial to the question of the sign's location on the ramp.

¶ Relying on *Wiley*, Washington and Alpine also argue that summary judgment was proper because Schmidt failed to retain a highway signage expert or an expert in highway maintenance or construction to define their duty and testify as to its breach. Finally, conceding that they controlled the construction site and knew of the elevation differential on the ramp, Washington and Alpine argue that evidence of the other motorcycle accidents on the ramp is inadmissible because Schmidt offered it only to prove their negligence.

¶ At the outset, we note that the parties analyze this negligence action, in part, by examining the duty of landowners. In their motions for summary judgment, Washington and Alpine argued that they were entitled to summary judgment under premises liability law. However, Schmidt responded that Washington and Alpine did not have a duty of a land owner or occupier, but rather had a duty to keep the roadway in a reasonably safe condition as set forth in *Hatch v. State Dept. of Highways* (1994), 269 Mont. 188, 887 P.2d 729. The District Court adopted Washington's and Alpine's argument that each had satisfied its duty of care and granted summary judgment in their favor. On appeal, Schmidt again argued that Washington and Alpine failed to keep the roadway in a reasonably safe condition while Washington and Alpine maintained that each had satisfied its duty of care under premises liability law. Thereafter, Washington and Alpine filed supplemental briefs reasserting that each had acted with due care under premises liability law as clarified in *Richardson v. Corvallis Pub. School Dist. No. 1* (Mont. 1997), 950 P.2d 748, 54 St.Rep. 1422. Schmidt replied that, even under *Richardson*, Washington and Alpine had breached their duty of care.

¶ Contrary to the parties' arguments and the decision of the District Court, we point out that both Washington and Alpine had a duty of ordinary care in maintaining the road construction site in a reasonably safe condition. This duty is not one of a possessor of the premises as set forth in *Richardson*, and, consequently, *Richardson* is not dispositive. Rather, Washington and Alpine had a duty of acting as a reasonable, prudent person would under the circumstances. *See Workman v. McIntrye Constr. Co.* (1980), 190 Mont. 5, 14, 617 P.2d 1281, 1286 (explaining that following directions and instructions given by the State, including the guidelines of the MUTCD, does not relieve a contractor from acting as a reasonable, prudent person under the circumstances).

¶ In this regard, to determine whether Washington and Alpine acted with due care under the circumstances, the MUTCD is one factor, among many, to consider in this case. The State Highway Commission adopted the MUTCD in 1971. *Brockie v. OMO Constr. Inc.* (1992), 255 Mont. 495, 500-01, 844 P.2d 61, 65. Consequently, the MUTCD has "the force of law" and evidence of a violation of the MUTCD is admissible to show negligence. *See Lynch v. Reed* (1997), 284 Mont. 321, 328-29, 944 P.2d 218, 222-23 (interpreting the rule for admissibility of industry standards and codes as established in *Runkle v. Burlington Northern* (1980), 188 Mont. 286, 613 P.2d 982). *See also Workman*, 190 Mont. at 21, 617 P.2d at 1290 (the MUTCD is promulgated by the Montana Highway Department and may be considered a standard or norm to be used for traffic control devices) (quoting *Runkle*, 188 Mont. 286, 613 P.2d 982).

¶ However, evidence of compliance with the MUTCD does not necessarily establish due care because the MUTCD, like any other national industry standard or code, is only a minimum standard. *See Martel v. Montana Power Co.* (1988), 231 Mont. 96, 104, 752 P.2d 140, 145 (explaining that defendant's compliance with the National Electrical Safety Code did not establish due care). As we explained in *Martel*, "[i]f the circumstances are such that a danger exists beyond the minimum which this [standard or norm] was designed to meet, then the jury may be informed that a defendant is negligent for not doing more." *Martel*, 231 Mont. at 104, 752 P.2d at 145. In the case at bar, questions of fact remain as to whether Washington and Alpine complied with the MUTCD, and even if they did, whether mere compliance with the MUTCD equated with the exercise of due care, given the condition of the temporary ramp.

¶ First, Schmidt argues that a material question of fact exists concerning the placement of the "BUMP" warning sign on the ramp, and, therefore, whether he was given adequate warning of the danger posed by the elevation differential. Schmidt points out that Johnson submitted two conflicting affidavits concerning the location of the "BUMP" warning sign on the temporary ramp. Johnson looked at the accident site on August 22, 1995, the day after Schmidt's accident, and prepared a sketch of the ramp, not drawn to scale, which indicated the location of orange construction barrels on either side of the ramp, certain traffic signs and various potholes. In Johnson's first affidavit, dated May 20, 1997, he stated that the "BUMP" sign was placed 200-300 feet before the ramp interfaced with the interstate; however, in his second affidavit, dated June 3, 1997, Johnson stated the "BUMP" sign was placed 500-600 feet before the ramp interfaced with the interstate.

¶ In his second affidavit, Johnson explained that at the time he prepared his first affidavit, his estimate of the distances "were guesses based upon my general recollections of the situation nearly two years ago . . . ." Johnson further explained that after reviewing a number of documents pertaining to the project, including construction plans, as-built plans, his construction diary notes, copies of Washington's project foreman's daily diaries, and copies of Alpine's traffic control notes, he believed "a more accurate distance is 500-600 feet from the 'BUMP' sign to the interface with Interstate 90[.]" The District Court, in a footnote to its June 10, 1997 summary judgment order, ruled that "[t]o the extent that a jury issue may have existed on this point [the location of the 'BUMP' sign], it no longer exists as a result of the second Johnson affidavit." We disagree.

¶ Johnson's affidavits directly contradict each other concerning the placement of the "BUMP" warning sign on the temporary ramp. Where the "BUMP" sign was placed on the ramp and whether this placement complied with the guidelines of the MUTCD are both questions of material fact that contribute to the resolution of this case. *See Bossard v. Johnson* (1994), 265 Mont. 272, 278, 876 P.2d 627, 630. Generally, ambiguities and even conflicts in a deponent's testimony are matters for the jury to sort out. *Wood v. Old Trapper Taxi* (Mont. 1997), 952 P.2d 1375, 1383, 54 St.Rep. 1263, 1269 (citations omitted). Consequently, we hold that the District Court erred in finding that no material questions of fact remained concerning the placement of the "BUMP" sign on the ramp.

¶ Likewise, we agree with Schmidt that the inconsistencies in Alpine's discovery

responses with both its own sign log book as well as with Johnson's August 22, 1995 sketch of the ramp also support his argument that a genuine issue of material fact exists concerning whether he was adequately warned of the danger on the ramp in compliance with the MUTCD. Furthermore, and more importantly, we agree with Schmidt that a question of fact exists as to whether mere compliance with the MUTCD would be sufficient under the circumstances of this case to satisfy Washington's and Alpine's duty of ordinary care.

¶ Washington and Alpine argue that our decision in *Wiley* established that expert testimony is required to avoid summary judgment in actions involving highway construction negligence claims. Relying on *Wiley*, Washington and Alpine argue that Schmidt is unable to satisfy his burden of raising a genuine issue of material fact as to this issue because he did not call a signage expert to testify as to their duty and what constitutes a breach of that duty. Additionally, Washington and Alpine argue that evidence of other motorcycle accidents is inadmissible because Schmidt only offered this evidence as proof of their negligence. Again, we disagree.

¶ In *Wiley*, a pedestrian and her husband filed a negligence action against the Montana Department of Transportation and the City of Glendive to recover for injuries the pedestrian sustained when she slipped on a metal pullbox cover on a sidewalk in Glendive. After extensive discovery, defendants moved for summary judgment and supported their motion with affidavits of five experts. Plaintiffs opposed summary judgment, relying on their own expert's deposition testimony to raise genuine issues of material fact concerning defendants' negligence. *Wiley*, 272 Mont. at 215-16, 900 P.2d at 311-12. The district court granted defendants summary judgment and plaintiffs appealed. On appeal, plaintiffs argued that summary judgment was improper because factual issues remained concerning the dangerous, defective, and unsafe condition of the pullbox cover. *Wiley*, 272 Mont. at 216, 900 P.2d at 312. We affirmed the district court concluding that plaintiffs failed to raise any genuine issues of material fact because their expert acknowledged that he was unable to state an opinion concerning the alleged factual issues pertaining to the condition of the pullbox cover, and, therefore, "his testimony failed to establish either a standard of care or a breach of any standard of care." *Wiley*, 272 Mont. at 218, 900 P.2d at 313-14.

¶ Unlike in *Wiley*, Schmidt's failure to produce a signage expert is not fatal in this case because the issue of Washington's and Alpine's negligence is not centered solely

on whether Schmidt was warned of the "bump" where the gravel portion of the ramp interfaced with the paved interstate, in compliance with the MUTCD. Rather, the issue in this case turns on whether the 6- to 8-inch height differential between the gravel and the concrete lip was unreasonably dangerous in and of itself. In other words, the essential issue is whether Washington and Alpine knew or should have known that a 6- to 8-inch difference in height between the gravel and the concrete lip on the temporary ramp was unreasonably dangerous to motorcyclists and whether remedial measures should have been taken to eliminate or mitigate the danger.

¶ In this regard, although Schmidt also did not list an accident reconstruction expert or a construction expert, as Washington and Alpine argue he should, Schmidt did list two motorcycle expert witnesses who were prepared to testify that the height differential was unreasonably dangerous to motorcyclists. Additionally, Schmidt submitted evidence of three other motorcycle accidents that occurred on the temporary ramp where the height differential existed within 72 hours of his own accident. Such testimony and evidence was sufficient to raise a genuine issue of material fact regarding whether Washington and Alpine were on "notice" of an unreasonably dangerous condition that required remediation and possibly warnings over and above those required by the MUTCD. Evidence of these other accidents, although inadmissible to prove negligence, was admissible to show the existence of a danger or defect and notice thereof. *See Runkle*, 188 Mont. at 292, 613 P.2d at 986.

¶ Based on the foregoing, we conclude that reasonable minds could differ as to whether Washington and Alpine breached their duty of ordinary care thereby causing Schmidt's motorcycle accident and subsequent damages. Therefore, because genuine issues of material fact exist, summary judgment is precluded in this case. Consequently, we hold that the District Court erred by granting Washington and Alpine summary judgment. Accordingly, we reverse and remand to the District Court for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We concur:

/S/ J. A. TURNAGE

No

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ KARLA M. GRAY