ALFRED E. PAULSON and THELMA E. PAULSON, PLAIN-
TIFFS AND APPELLANTS, v. KUSTOM ENTERPRISES, INC.,
A UTAH CORPORATION, D/B A ALLIED CARPETS, AND PRU-
DENTIAL FEDERAL SAVINGS AND LOAN ASSOCIA-
TION, A FEDERAL ASSOCIATION, DEFENDANTS AND RESPOND-
ENTS.

No. 11864.
Submitted February 9, 1971.
Decided April 8, 1971.
483 P.2d 708.

Alexander, Kuenning, Hall & Miller, John H. Kuenning (argued), Great Falls, for plaintiffs and appellants.

McCaffery & Peterson, Joseph J. McCaffery, Jr., (argued), Butte, for defendants and respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from summary judgments granted to defendants and against plaintiffs as will be set out hereinafter. Appellants will be referred to as plaintiffs, respondents as defendants or Prudential or Kustom.

Plaintiffs complained in three counts: (1) to rescind or cancel a contract of purchase from defendant Kustom and also to rescind or cancel an installment note-mortgage to defendant Kustom, which Kustom had transferred to defendant Prudential and which Prudential had recorded, (2) to quiet title to plaintiffs' residence which was the property described in the note-mortgage, and (3) to recover actual and punitive damages for slander of title to plaintiffs' residence.

Defendant Prudential counterclaimed for collection of the unpaid indebtedness on the note-mortgage and for a foreclosure of the mortgage.

Depositions of the officers and employees of Prudential and officers of Kustom were taken by plaintiffs. Written interrogatories directed to Prudential and Kustom were answered. Prudential and Kustom took the depositions of the plaintiffs.

Thereafter pretrial briefs were filed and a pretrial hearing

held. Before entry of a pretrial order, Prudential filed a motion for summary judgment on all counts of the complaint, and for summary judgment on its counterclaim, and based its motion upon the pleadings, depositions, exhibits and interrogatories.

Kustom subsequently filed a motion for summary judgment on the plaintiffs' count 3 for slander of title.

The district court entered separate orders granting summary judgment as prayed for to Prudential and to Kustom.

Motions for rehearing and to set aside the summary judgments were denied.

The facts ascertainable and the issues presented on this appeal are somewhat complicated. From the respondents' point of view, the facts are simple. Prudential claims to be bona fide purchaser for value without notice of a note and mortgage assigned to it.

However, from plaintiffs' point of view the facts are indeed complicated.

The facts asserted by plaintiffs, partly agreed to but essentially denied in various particulars, are:

Plaintiffs are residents and citizens of Great Falls, Montana, residing at 2615 Fifth Avenue North. On March 12, 1968, Kustom Enterprises, Inc., was a Utah corporation, owned and operated by Thomas Roth, Sherry Roth, his wife, and Joseph Padilla, who were residents of the State of Utah, and Kustom Enterprises, Inc., maintained an office and place of business at 724 South Third Street East, Salt Lake City, Utah, under the fictitious name of Allied Carpets, and it conducted its business in the State of Montana.

At all relevant times, Prudential Federal Savings and Loan Association was a Federal Association chartered with its principal place of business at Salt Lake City, Utah, and doing business in Utah and in the State of Montana.

On or about March 12, 1968, Roth was the general manager of the Great Falls business affairs of Kustom and had full and complete charge of its business operations in Great Falls. On March 12, 1968, plaintiffs executed a printed contract with de-

fendant, Kustom, which contract provided for the purchase of carpet at $1,400 to be paid in two installments, one installment of $700 due 60 days from the completion of the carpet laying, and the balance of $700 to be paid February 1, 1969 with no interest.

On the same day, and at the same place, plaintiffs affixed their signatures to a form which is the installment note-mortgage involved in this litigation

The legal description to the plaintiffs' premises was inserted after the instrument had been signed by the plaintiffs.

The legal description to the plaintiffs' premises which was inserted is as follows:

"Lot 11, Block 165, Great Falls, original townsite, Cascade County, Montana, according to the official plat thereof recorded in the office of the Recorder, of said county."

The next day, on March 13, 1968, at Salt Lake City, Utah, Kustom assigned the installment note-mortgage bearing the signatures of the plaintiffs to Prudential.

Donna S. Coburn, an employee of Prudential is the person who caused the legal description of the property of the plaintiffs to be inserted in the installment note-mortgage and Prudential then caused the installment note-mortgage and assignment to be recorded in the office of the county clerk and recorder of Cascade County, Montana, on March 22, 1968.

The carpet which was installed on the plaintiffs' premises by Kustom remained on plaintiffs' premises and is still being used by them.

Prudential prepared or caused to be prepared and approved the printed form which is the installment note-mortgage herein, including the specific provisions thereof which authorized the holder of the note and mortgage "to insert in this promissory note and mortgage the legal description of said real property, subsequent to the signatures of the undersigned hereto."

In support of its first count for rescission or cancellation, plaintiffs' pretrial memo offered to prove the following ultimate facts extracted from their amended complaint.

Kustom engaged in the business in Montana of gaining entrance for its salesmen into the private homes of Montana citizens by conducting telephonic pseudo-surveys and marketing and selling its floor carpet products in such homes.

On March 12, 1968, R. J. Driver gained admittance to the home of the plaintiffs at Great Falls as a result of the telephonic activities of other employees of defendant, Kustom, and with the intent to deceive and defraud plaintiffs, then and there falsely and fraudulently represented to plaintiffs that Allied Carpets were dyed by a dye process developed by Celanese Corporation, which so impregnated the material that the color could not fade, even after ten years of useage, that a new patch could be added to replace a worn piece of carpet even after as much as ten years of usage and would match perfectly, and that a mismatch of carpet was not possible at any time, that the carpet which was being offered was a commercial grade carpet used in heavy carpet areas of such places as the Flamingo in Las Vegas, Nevada, where Kustom Enterprises, Inc., had installed carpet of like quality, that the carpet was a newly developed carpet which would not mat, even from furniture placement for an extended period of time.

Believing and relying on representations by R. J. Driver, the plaintiffs, on March 12, 1968 at their residence in Great Falls, entered into the printed contract which provides for the payment of the purchase price of $1,400 to be paid in two installments of $700 each, as therein provided.

Pursuant to the method of operation of defendant, Kustom Enterprises, Inc., and the plan and design of Thomas Roth, and after obtaining the signatures of plaintiffs to the original contract providing for payment in two $700 payments, R. J. Driver falsely represented to plaintiffs that Kustom desired to take photographs of the carpet when it was installed to show on television, and to advertise the beauty of the installed carpet through other communications media and asked if plaintiffs would consent to that. Driver tricked the plaintiffs into signing an incompleted printed form in the reasonable belief by the

plaintiffs that it was merely a consent to use photographs of plaintiffs' home for advertising purposes, and plaintiffs did not intend to sign such instrument for any other purpose. Driver covered the top portion of said pretended consent with the original of the contract after having first flashed plaintiffs' consent for photographs quickly in front of the eyes of the plaintiffs, and there were no typewritten or handwritten parts thereof at the time the instrument was signed by the plaintiffs, and Thomas Roth was not present when it was signed.

The "consent" in truth and in fact was an incomplete installment note-mortgage which was completed after the signatures of the plaintiffs were procured as stated. Roth signed the same as a witness to the signatures of the plaintiffs, although Roth was not present when the signatures were obtained and never had been in the presence of the plaintiffs. Having falsely signed the note as a witness, Roth on March 13, 1968 appeared before Esther M. DeVault at Great Falls, Montana, and being duly sworn on oath, wilfully and falsely stated that he was present and saw Alfred E. Paulson and Thelma M. Paulson execute and sign the note and mortgage.

The legal property description to the plaintiffs' premises was inserted after the instrument had been signed by them and without their authorization.

Despite the separate purchase contract having provided for the payment of $1,400 in two installments of $700 each, the note and mortgage were completed without plaintiffs' knowledge or authorization to provide for the payment of $1,426, with interest thereon at the rate of 10% per annum in monthly installments of $125.43.

On March 13, 1968, the installment note and mortgage were endorsed by Joe Padilla, and on the following day were acknowledged and assigned at Salt Lake City, Utah by him on behalf of Kustom to Prudential.

On March 13, 1968, plaintiffs noticed that, contrary to the representations of Driver, respecting the matching of colors, one piece of carpet installed in plaintiffs' living room was of a

different color than the rest of the carpet and that the color difference was distinctly noticeable all along the seam where two ·pieces were sewn together. Plaintiffs complained to the carpet installer of Kustom known as "Pete" concerning such color difference on March 13, 1968, and renewed their complaint on March 20, March 24, and March 27 to "Pete" and by telephone to Thomas Roth and were assured by both of them that this condition would be corrected by Kustom.

The signatures on the installment note were affixed without the installment note having been completed. The typewritten portion of the installment note containing the address of the plaintiffs and that portion of the typewritten portion which conforms to the address as to style of type were completed by Kustom at Great Falls, Montana. That portion which contains the legal description and all of the typewritten portion which conforms to the legal description as to style of typewritten type were completed by Prudential at Salt Lake City, Utah. The principal amount was inserted by handwriting after the note had been transferred to Prudential.

Shortly prior to April 8, 1968, plaintiffs discovered that the statements and representations of Kustom that it would correct the color differences were untrue; that various other statements which induced plaintiffs to purchase the carpet were untrue. Plaintiffs attempted to contact the representatives of Kustom at their Great Falls· telephone number for the purpose of rescinding the contract but received no response and were advised that the representatives of Kustom had departed from Montana following an inquiry into their activities by the Cascade county attorney.

Plaintiffs have been and are ready and willing to redeliver the installed carpet to Kustom upon being restored to their former position, and upon such conditions as the court may direct.

The second count adopts by reference the facts alleged in the first count and adds the statutory allegations of a quiet title action.

The third count is the action for slander of title, adopts the

allegations of first count and alleges that defendants conspired together and acted maliciously, unjustly and unlawfully as follows:

(a) Prudential prepared or caused to be prepared and approved the printed form which is the installment note and mortgage and specified the provisions authorizing the holder "to insert in this promissory note and mortgage the legal description of said real property subsequent to the signatures of the undersigned hereto";

(b) Prudential required Kustom to provide it with unilateral agreements in the form of a letter of transmittal directly relating to its purchase of accounts from Kustom, including the account of plaintiffs, whereby Kustom would and did agree to become liable for the purchase of such note and mortgage under the warranties and conditions that the signatures on the note were not genuine or that a witness to a signature did not in fact witness the signing of said note or that the acknowledgment is not valid;

(c) Prudential authorized the agents and employees of Kustom to complete said notes without a proper legal description and made the agents of Kustom its agents for that purpose;

(d) The acts of Kustom as alleged in Count 1 were pursuant to a method of operation habitually and customarily utilized and employed by defendant, Kustom, of which Prudential had actual knowledge;

(e) At all times pertinent, Prudential had actual knowledge that the printed form being utilized by defendant Kustom which is the contract referred to in Count 1, contains the express provision, "interest included in payment" and that these forms were being used and completed by defendant, Kustom, in such a manner as to be in direct contravention of the terms of the notes and mortgages supplied to Prudential as exemplified by the installment note and mortgage signed by plaintiffs providing for the addition of interest at 10%, and that such a conflict in pro-

visions actually exists between the contract with Kustom signed by the plaintiffs and the installment note and mortgage bearing their signatures which was assigned to Prudential;

(f) Prudential in fact inserted the legal description to the plaintiffs' property contained in the installment note and mortgage;

(g) Prudential recorded the pretended mortgage against the property of plaintiffs to cloud and disparage plaintiffs' title with the world, to vex, annoy and harass plaintiffs and continued to keep the same recorded without releasing or satisfying the claim after notice of all of the facts alleged in this cause of action for the purpose of attempting to extort money from the plaintiffs;

(h) At all times subsequent to the service of the plaintiffs' original complaint upon them, and for some time prior thereto, and at all times subsequent thereto, defendants have been and are fully cognizant that the pretended mortgage involved herein is void and invalid and of no force and effect and that the same constitutes a cloud on plaintiffs' title; defendants nevertheless, without any justifiable motive, have failed to release or satisfy the same of record, thereby compelling plaintiffs to bring and to maintain this action, all to plaintiffs' damage in the sum of $500 for attorneys' fees and $341.64 costs and expenses, and for continuing and accruing costs and expenses, and since the commencement of this action defendant Kustom pursuant to an understanding with defendant, Prudential, has utilized said pretended recorded mortgage lien as an instrument of extortion for the purpose of attempting to extract from plaintiffs a cash settlement of defendants' pretended claims against plaintiffs;

(i) By reason of the purposeful, wrongful intent of defendants and the elements of malice present in their acts, and their wilful and wanton disregard of the rights of plaintiffs, the plaintiffs are entitled to punitive and exemplary damages against defendants.

.. The foregoing disputed facts are extracted from plaintiffs'

pretrial memorandum which in turn are extracted from the amended complaint as supported by the exhibits, depositions and answers to interrogatories

The issues presented go to the granting of the summary judgments:

(1) against plaintiffs on their claim for rescission or cancellation.

(2) against plaintiffs on the quiet title count.

(3) against plaintiffs on the slander of title count.

(4) summary judgment on Prudential's counterclaim.

We begin our discussion by an inquiry into whether as a matter of law the defendant Prudential was a holder in due course of the note-mortgage. If Prudential was, the district court was correct in granting summary judgments. If it was not, then each count must be examined.

Prudential, as previously noted, sought to recover summary judgment against plaintiff on the note and mortgage, alleging that it is the owner and holder in due course of the instrument.

Plaintiffs' reply denies the allegations, specifically denying that Prudential is a holder in due course and alleging that plaintiffs' signatures were procured by fraud, that Prudential took the note knowing the entire circumstances surrounding the signing of the note and that Kustom and Prudential took the note and mortgage pursuant to a common plan and design as alleged in plaintiffs' amended complaint.

Prudential, in its brief, describes plaintiffs' actions thusly: "It is incredulous that Plaintiffs, as adult persons, could sign three separate instruments without reading or understanding what they were signing. * * *" Prudential may call this incredulous, but the only other explanation is that plaintiffs were indeed tricked into the signing of a note calling for an amount different than the first contract, adding monthly payments and interest. Incredulous indeed, so much so that they must have been tricked by agents of Kustom; and it is alleged the agents were those of Prudential as well. It is interesting to note that

one of the deposed participants in the transaction refused to answer certain questions on the ground the answers might incriminate him.

The evidence developed by proposed exhibits and by discovery depositions indicated Prudential's close connection with Kustom. Prudential drafted all of the forms of note-mortgages used by Kustom in Montana. Prudential's senior vice-president admits these forms were prepared in anticipation of the instruments being transferred to Prudential as holder. The mortgage acknowledgement was prepared in advance in such a form that never would the acknowledgment be made by the maker before a disinterested person or by the maker at all. Rather, the acknowledgment in each instance was to be, and in fact was, by someone other than the maker who swore before a notary that he saw the maker execute the instrument. Thus did Prudential plan that each and every note-mortgage solicited by Kustom and its agents in Montana would never be acknowledged by the maker himself in the presence of a disinterested notary—one evidentiary fact, to be considered with others, which plaintiffs contend should be submitted to the trier of fact on the question of good faith purchase.

The form prepared by Prudential also authorized a subsequent holder (Prudential) to complete the note-mortgage by inserting a legal property description, from a street address inserted in the note-mortgage in each instance by a Kustom employee. Such Kustom employee was required to perform in a manner prescribed by Kustom in order to receive his pay.

Plaintiffs allege they can establish that without exception every note-mortgage acquired by Kustom in Montana was transferred to Prudential. None were transferred or assigned to any other party. Plaintiffs also allege they can establish that although such note-mortgages were assigned by Kustom to Prudential "without recourse," many were compromised and settled between Kustom officers or employees and the makers after such assignment. The attorneys for Kustom wrote letters to makers offering to negotiate settlements after such notes were assigned

"without recourse" to Prudential, including such a letter to these plaintiffs after suit had been commenced. In each such case where settlement was affected, Prudential ratified the settlements as negotiated by Kustom's attorneys and satisfied note-mortgages of record.

Plaintiffs have offered to prove that Prudential purchased at a discount the note-mortgage assigned to it by Kustom and in addition charged a higher rate of interest than it charged on loans made directly to its own borrower homeowner customers.

Plaintiffs also offered to prove that Prudential took an assignment of plaintiffs' note-mortgage after numerous complaints had been made to it as to the unscrupulous business methods employed by Kustom.

Other evidence offered by plaintiffs to establish a close connection between Kustom and Prudential includes (1) in three instances where a dispute arose between the Montana maker of a note "irrevocably assigned" by Kustom to Prudential, the dispute was settled by Kustom and ratified by Prudential, (2) Prudential acquired the Paulson note-mortgage knowing that its provisions were in direct conflict with an existing written contract between Kustom and plaintiffs (the contract provided for two equal $700 payments, without interest, whereas the note-mortgage provided for the payment of $1,426 plus 10% interest, payable in monthly installments), (3) the principal amount of the note-mortgage was filled in after it had been "assigned" and transferred to Prudential, (4) Prudential, while taking assignments of all of the Kustom notes, did not intend any further negotiation of such note, and did not further negotiate any, (5) although Kustom entered into contracts, such as the Paulson sales contract, whereby it purported to be extending credit on its own behalf, it did not in fact extend credit on its own behalf, but consistently extended credit as an agent of Prudential, (6) if Prudential would not approve the extension of credit, no credit in fact would be extended, and (7) in every instance, notes were assigned to Prudential as rapidly as they could be forwarded to Prudential in the regular course of business.

without delay, and in case of the Paulson note, it was executed at plaintiffs' residence on March 12, dated and acknowledged by an officer of Kustom in downtown Great Falls the following day, assigned to Prudential the same day, and a certificate of corporate acknowledgment of the assignment was executed at Salt Lake City the next following day. Thus, despite the distance between Great Falls and Salt Lake City, it took less than 48 hours to complete the entire transaction and Prudential even had a letter on the way to plaintiffs within such 48 hour period disavowing responsibility for the acts of Kustom.

The foregoing fact contentions are asserted by plaintiffs' amended complaint, reply, pretrial memorandum and motion for rehearing on motion for summary judgment and are borne out by the evidence then adduced in exhibits, depositions and answers to interrogatories.

Does this recital suggest a genuine issue of material fact on the question of whether Prudential was a holder in due course? We hold that it does, and that there is a justiciable issue as to whether Prudential is a holder in due course. (See discussion in Morgan v. Reasor Corporation, 69 Cal. 2d 881, 73 Cal.Rptr. 398, 447 P.2d 638, 647, 648.)

Prudential, not being a holder in due course as a matter of law, was not entitled to summary judgment on its counterclaim.

Now, then, this leaves for consideration the three counts of the plaintiffs' complaint. The first one was for cancellation and rescission of the contract and note-mortgage. The district court denied relief to Kustom on count one and count two but as to Prudential summary judgment was granted. It is obvious this was done because Prudential was deemed a holder in due course. Having found heretofore that this is a disputed material fact, the situation of Prudential and Kustom is the same on both counts 1 and 2. Absent Prudential's status as a holder in due course, there are material facts in contention.

Now, as to Count 3, the slander of title count. The principal contention of both defendants was that the actual dam-

ages claimed by plaintiffs does not constitute legal damages and even if the plaintiffs can prove malice, they cannot recover exemplary damages unless they are entitled to recover actual damages. The issue at this point hinges around the recoverability of certain attorney fees as damages. Defendants contend that attorney fees are not recoverable in a slander of title action.

On the other hand, plaintiffs contend they are not attempting to recover attorney fees for the bringing of the slander of title action as such but rather are attempting to recover attorney fees and costs for the necessary expense of removing a cloud on plaintiffs' title resulting from the slander.

In pretrial conferences plaintiffs' counsel declared the damages alleged in the sum of $500 were for attorney fees.

Section 17-208, R.C.M.1947, reads as follows:

"*Exemplary damages—in what cases allowed.* In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the *actual damages,* may give damages for the sake of example, and by way of punishing the defendant." (Emphasis added.)

Thus, Prudential reasons that there must be *actual damages* shown in any event; and that here attorney fees are nothing more than *special* damages and as such must be pleaded which they were not. Thus the reasoning goes on, there being no monetary loss shown, and there being no special damages pleaded, no actual damages are shown to exist and therefore no exemplary damages can arise All of this presupposes that no claim for relief was shown in any event as against Prudential because of its being a holder in due course—which we have discussed before.

In Gilham v. Devereaux, 67 Mont. 75, 214 P. 606, this Court said:

"The foundation for the recovery of punitive or exemplary damages rests upon the fact that *substantial damages* have been sustained by the plaintiff. Punitive damages are not given as a matter of right, nor can they be made the basis of recovery

independent of a showing which would entitle the plaintiff to an award of actual damages. Actual damages must be found as a predicate for exemplary damages.

\* \* \* \* \* \*

"\* \* \* nor can exemplary damages constitute the basis of a cause of action, for they are mere incidents to it \* \* \*.

"\* \* \* No right of action for exemplary damages, however, is ever given to any private individual who has suffered no real or actual damages. He has no right to maintain an action merely to inflict punishment upon some supposed wrongdoer. If he has no cause of action independent of a supposed right to recover exemplary damages, *he has no cause of action at all.*" (Emphasis added.)

Later in Fauver v. Wilkoske, 123 Mont. 228, 211 P.2d 420, this Court held that if actual damage is shown, although the amount or extent thereof cannot be shown in money value, exemplary damages may be awarded. The Court in *Wilkoske* expressly overruled the *Gilham* case in part. At this stage of this case, on motion for summary judgment, a claim for damages was made.

In their brief, Prudential argues that Westfall v. Motors Ins. Corp., 140 Mont. 564, 374 P.2d 96, precludes a recovery of exemplary damages upon the ground the present action arises from contract. We think not. The obligation alleged to have been breached here did not arise from the contract entered into. Rather, the breach of the obligation alleged was in the trickery and the conspiracy to violate a penal statute as discussed in the facts heretofore. The fact it arose during the contracting for the sale and installation of the carpeting does not make it "arise from contract" as section 17-208, R.C.M.1947, defines. Assuming that proof is made that plaintiffs were tricked into signing a paper not representing the contract at all, then this breach of an obligation does not arise from contract; rather it is a tort arising independent of the contract. Two later cases, State ex rel. Larson v. District Court, 149 Mont. 131, 423 P.2d 598, and State ex rel. Cashen v. District Court, Mont., 482 P.2d

567, have also discussed the rule. In the latter case, the relator had contended that her claim encompassed both a breach of the insurance contract and a statutory violation of the Insurance Code. We found that only a breach of contract was involved and even though the breach might have been wilful or fraudulent, no exemplary damages arose. Here, in the instant case, no breach of contract, so far as Count 2 is concerned is involved. The fact that Count 3, the slander of title action a tort, is joined in one complaint with Count 1, a breach of contract action, does not change the nature of Count 3.

By what has been heretofore said, the judgments on Counts 1, 2 and 3 of the complaint are set aside. The judgment on the defendant Prudential's cross complaint is reversed and the matter remanded for further proceedings.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, and JOHN C. HARRISON, concur.

MR. JUSTICE DALY did not participate in this cause.