No. 03-608

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 72

ROBERT M. JACOBSEN,

        Plaintiff and Appellant,

    v.

FARMERS UNION MUTUAL INSURANCE
COMPANY,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
                     In and for the County of Cascade, Cause No. ADV-02-194,
                     The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Roland B. Durocher, Hartelius, Ferguson, Baker & Kazda, P.C., Great Falls,
                Montana

        For Respondent:

                Robert J. Phillips, Phillips & Bohyer, P.C., Missoula, Montana

                        Submitted on Briefs:  December 23, 2003

                                  Decided:  March 23, 2004

Filed:

                                Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Appellant Robert M. Jacobsen filed a complaint against Respondent Farmers Union Mutual Insurance Company (Farmers Union) in the Eighth Judicial District Court, Cascade County. Jacobsen subsequently filed a motion for summary judgment on his complaint. The District Court denied Jacobsen's motion, and granted summary judgment in favor of Farmers Union. Jacobsen appeals. We affirm the judgment of the District Court.

¶2     We restate the sole issue on appeal as follows:

¶3     Did the District Court err when it denied Jacobsen's motion for summary judgment and granted summary judgment in favor of Farmers Union?

## BACKGROUND

¶4     On July 5, 2000, Jacobsen was driving his vehicle near Vaughn, Montana, when he encountered a vehicle driven by Kenneth Keyser. Jacobsen watched as Keyser's vehicle crossed the center median and eventually came to rest in a wheat field. Fearing that Keyser was injured, Jacobsen pulled his vehicle to a stop and ran to investigate.

¶5     Jacobsen found Keyser lying unconscious in his vehicle, with blood flowing from a wound in his head. Jacobsen attempted to control the bleeding by applying pressure to the wound. After several minutes, a team of paramedics arrived at the accident scene. As the paramedics removed Keyser from his vehicle, Jacobsen noticed a handgun underneath Keyser's body. Keyser was transported to a hospital, where he died several days later. The cause of his death was determined to be suicide.

¶6     In September of 2001, Jacobsen began seeking treatment from counselor Steven Gliko for the emotional distress he suffered as a result of his incident with Keyser. At the time of

2

the incident, Jacobsen was insured by Farmers Union. Keyser was not insured.

¶7     On February 21, 2002, Jacobsen filed a complaint against Farmers Union, alleging that he was entitled to recover uninsured motorist benefits and medical pay benefits under his insurance policy. Jacobsen filed a motion for summary judgment on his complaint on October 2, 2002. On April 22, 2003, the District Court issued an order, denying Jacobsen's motion for summary judgment, and granting summary judgment in favor of Farmers Union. Jacobsen filed a timely appeal.

## STANDARD OF REVIEW

¶8     Our review of a district court's grant or denial of a motion for summary judgment is *de novo*. *Casiano v. Greenway Enterprises, Inc.*, 2002 MT 93, ¶ 13, 309 Mont. 358, ¶ 13, 47 P.3d 432, ¶ 13. Therefore, we apply the same Rule 56, M.R.Civ.P., criteria as applied by the district court. *Casiano*, ¶ 13. Pursuant to Rule 56, M.R.Civ.P.:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Casiano*, ¶ 13.

¶9     In this case, the issue before this Court is whether, under the terms of Jacobsen's insurance policy, Farmers Union was entitled to judgment as a matter of law. The interpretation of an insurance policy presents a question of law. *Wendell v. State Farm Mutual Ins. Co.*, 1999 MT 17, ¶ 10, 293 Mont. 140, ¶ 10, 974 P.2d 623, ¶ 10. Consequently, we review whether the District Court correctly interpreted the provisions of Jacobsen's

3

insurance policy. *Wendell*, ¶ 10.

## DISCUSSION

¶10    Did the District Court err when it denied Jacobsen's motion for summary judgment and granted summary judgment in favor of Farmers Union?

¶11    The relevant language in Jacobsen's policy for Uninsured Motorist (UM) coverage provides:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

Consistent with the statutory language in § 33-23-201, MCA, the policy defines "bodily injury" as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

¶12    In its summary judgment order, the District Court determined that the emotional injury suffered by Jacobsen, including his physical manifestations, did not constitute "bodily injury" as that term appears in § 33-23-201, MCA, nor as that term appears under the UM policy agreement. The District Court further concluded that, even assuming *arguendo* that Jacobsen suffered "bodily injury," such injury did not result from Keyser's use of an uninsured motor vehicle as required under the Farmers Union policy, but that Jacobsen's emotional distress resulted from Mr. Keyser's use of a gun as opposed to Keyser's use of an uninsured motor vehicle.

¶13    On appeal, Jacobsen argues that the District Court erred in finding that Jacobsen did

4

not suffer "bodily injury" as defined under the Farmers Union UM policy. Citing *Treichel v. State Farm Mut. Ins. Co.* (1996), 280 Mont. 443, 930 P.2d 661, Jacobsen argues that this Court has long recognized that mental or emotional injuries are compensable even absent a physical injury or physical contact to the injured person and, therefore, that this Court should likewise recognize that Jacobsen's injury, even absent physical contact, is compensable under Jacobsen's UM policy with Farmers Union.

¶14    In *Treichel*, the plaintiff and her spouse were riding bicycles when the plaintiff witnessed the insured's vehicle strike her spouse from behind, resulting in injuries from which he subsequently died. *Treichel*, 280 Mont. at 444-45, 930 P.2d at 662-63. The plaintiff subsequently filed a claim against State Farm for negligent infliction of emotion distress, arguing that, under the insured's policy, her emotional distress was an independent, non-derivative cause of action compensable under the insured's policy, notwithstanding that she herself suffered no direct physical contact with the insured's motor vehicle. *Treichel*, 280 Mont. at 445, 930 P.2d at 663. The District Court agreed and granted summary judgment in favor of plaintiff and against State Farm. *Treichel*, 280 Mont. at 445, 930 P.2d at 663.

¶15    On appeal, this Court agreed that plaintiff's severe emotional distress was an "independent and direct" injury of the type compensable under this Court's decision in *Sacco v. High Country Independent Press* (1995), 271 Mont. 209, 896 P.2d 411, and that such serious and severe emotional distress was a reasonably foreseeable consequence of the insured's negligence. *Treichel*, 280 Mont. at 449, 930 P.2d at 665.

¶16    However, while it is true that in *Sacco* this Court recognized that emotional injuries

5

are compensable without a physical component if the emotional distress is sufficiently severe, we did not, as Jacobsen contends, explicitly or implicitly hold in *Treichel* that such emotional or psychological injuries generally constitute a compensable injury under the rubric of "bodily injury." Rather, in *Treichel* this Court recognized plaintiff's emotional injury to be an injury "independent" of bodily injury, determining it to be compensable under the insured's policy, not as a bodily injury – which was undefined in the policy – but as a separate emotional injury. *Treichel*, 280 Mont. at 449, 930 P.2d at 665.

> We note that while the State Farm policy does not define bodily injury, per se, it does allow recovery for various injuries including loss of consortium which is not a physical injury. Moreover, State Farm is willing to provide coverage for emotional injuries resulting from the decedent's physical injury, but only subject to the one person limitation. Under the circumstances, State Farm is estopped from arguing that there is not coverage for emotional or mental injuries. Clearly, State Farm is willing to provide coverage for those types of injuries.

*Treichel*, 280 Mont. at 449, 930 P.2d at 665.

¶17 Thus, unlike the Farmers Union policy in the instant case, State Farm's policy in *Treichel* did not define the term "bodily injury." State Farm did, however, demonstrate in its policy a willingness to provide coverage for emotional injuries which resulted from physical injuries. There is no such demonstrable similarity in the Farmers Union policy in the instant case.

¶18 Jacobsen contends, however, that the definition of "bodily injury" in the Farmers Union policy is ambiguous by virtue of the fact that the term itself–bodily injury–is utilized to define or describe the term. Jacobsen contends that, given the alleged ambiguity, construing the language in favor of Jacobsen and against the insurer, Farmers Union, the

6

definition of "bodily injury," as it includes the term "sickness," should cover "all types of suffering inflicted on the body."

¶19 An ambiguity exists when a contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. *Wendell* at ¶ 14 (citation omitted). We examine the question of ambiguity in insurance contract language from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business. *Wendell*, ¶ 14 (citation omitted). Any ambiguities in the language of a policy will be construed against the insurer. *Wendell*, ¶ 14 (citations omitted).

¶20 Construing a similar policy definition of "bodily injury" in *Bain v. Gleason* (1986), 223 Mont. 442, 726 P.2d 1153, this Court stated:

> Bain contends that defining a term by repeating the same term, such as "bodily injury means bodily injury" is itself ambiguous. . . . If we define an apple as an apple, the definition may be ridiculous, but it is not ambiguous. Bodily injury does not become ambiguous simply because it is defined as bodily injury, especially since the term can be plainly understood as meaning physical injury to a person.

*Bain*, 223 Mont. at 452, 726 P.2d at 1159. Given this Court's conclusion in *Bain*, we disagree with Jacobsen that the mere repetition of the term in its definition creates an ambiguity in the meaning of the term "bodily injury."

¶21 Recognizing that this Court has not specifically addressed whether or not emotional or psychological injuries are in fact "bodily injury" as defined in the instant case, Jacobsen next draws from Workers' Compensation law, relying on the cases of *Stratemeyer v. Lincoln County* (1996), 276 Mont. 67, 915 P.2d 175, and *Kleinhesselink v. Chevron* (1996), 277 Mont. 158, 920 P.2d 108, noting that Montana law has recognized that emotional or

7

psychological injuries can be the basis for valid tort claims outside of the Workers' Compensation Act, as the Act has a restrictive definition of "bodily injury" that clearly excludes emotional injury. Jacobsen contends that, as the definition of "bodily injury" in the Farmers Union policy is less restrictive and less limiting than the definition of the same under the Workers' Compensation Act, that Farmers Union did not intend to limit its UM coverage only to physical injuries.

¶22 While we agree with Jacobsen that emotional injuries are not covered under the limited definition of "bodily injury" in the Workers' Compensation statutes, we agree with Farmers Union that this Court's holdings in *Stratemeyer* or *Kleinhesselink* have no bearing on the present case. Whether emotional or psychological distress is outside the *quid pro quo* foundation of Workers' Compensation law or is otherwise compensable in a tort action under Montana law is neither in dispute nor relevant in this case. Rather, the issue in this case is purely contractual in nature. As noted by Farmers Union, "[t]here is no dispute that Montana tort law allows for recovery of purely emotional damages. However, this case involves the interpretation of contract, and tort law is wholly irrelevant to that interpretation."

¶23 Farmers Union responds that, although this Court has not directly addressed whether emotional or psychological injuries are in fact "bodily injury" as defined in the instant case, such issue has been discussed in myriad other cases, including United States District Courts for the District of Montana. While federal court decisions applying Montana law are not binding on this Court, the rationale therein is often compelling.

¶24 In *Aetna Cas. and Sur. Co. v. First Sec. Bank of Bozeman* (D.Mont. 1987), 662 F.Supp. 1126, Aetna brought an action seeking a declaratory judgment that the liability

8

insurance policy it issued to the bank did not provide coverage for damages sought against the bank and one of its employees in a separate suit pending in state district court. *Aetna*, 662 F.Supp. at 1127. Aetna moved the United States District Court for summary judgment, arguing that the damages and injuries alleged by the bank's former employee did not fall within the policy definitions of "bodily injury," among other policy definitions. *Aetna*, 662 F.Supp. at 1127.

¶25 Aetna's policy defined "bodily injury" as "bodily injury, sickness or disease," language parallel to the definition of "bodily injury" in the Farmers Union policy in the instant case. Aetna argued that the term "bodily injury" "requires that the underlying action against its insured include some allegation of physical injury, as opposed to emotional injury." *Aetna*, 662 F.Supp. at 1127. The bank countered by urging the Court to determine that the term "bodily injury" also included emotional distress.

¶26 Noting that Montana law contained no authority on point, the United States District Court looked to how numerous other courts have construed the term "bodily injury" as it is used in comprehensive general liability insurance policies. *Aetna*, 662 F.Supp. at 1128. Looking at numerous cases, the District Court determined that "the courts that have interpreted such language have determined that it limits coverage to physical injury to the body." *Aetna*, 662 F.Supp. at 1127 (citing *American and Foreign Insurance Co. v. Church Schools, Diocese of Virginia* (E.D.Va. 1986), 645 F.Supp. 628, 632-33 (applying Virginia law to hold that "bodily injury" coverage does not extend to purely nonphysical or emotional harm); *St. Paul Fire and Marine Insurance Co. v. Campbell County School District No. 1* (D.Wyo. 1985), 612 F.Supp. 285, 287 (applying Wyoming law in holding that allegations

9

of emotional suffering do not constitute "bodily injury"); and *Rolette County v. Western Casualty & Surety Co.* (D.N.D. 1978), 452 F.Supp. 125, 129-30 (applying North Dakota law to hold that "bodily injury," defined in the policy in question as including "sickness and disease," did not extend coverage to damages for embarrassment, humiliation and emotional distress)).

¶27    Applying relevant Montana law, the United States District Court noted that, in tort actions alleging mental and emotional injuries, this Court has distinguished such injuries from physical injuries. *Aetna*, 662 F.Supp. at 1128 (citing *Johnson v. SuperSave Markets, Inc.*, (1984), 211 Mont. 465, 471, 686 P.2d 209, 212 (allowing recovery for mental distress absent a showing of physical injury)). The Court thus concluded that "[i]n light of the Montana court's recognition that 'there is a difference between (physical) injury and (mental) distress,' it is likely the Montana Supreme Court would follow the lead of the above-cited decisions and hold that the term 'bodily injury,' as used in the liability insurance policy at issue, limits coverage to *physical* injury, sickness or disease." *Aetna*, 662 F.Supp. at 1128-29. (Citation omitted).

¶28    Such conclusion comports with this Court's more recent aforementioned cases concluding that emotional and psychological injuries are independent of physical injury and independently compensable in tort law if the emotional injury is sufficiently severe. *See generally Sacco*, 271 Mont. 209, 896 P.2d 411, and *Treichel*, 280 Mont. 443, 930 P.2d 661. It also comports with this Court's conclusion in *Bain* that the term "bodily injury," plainly understood, means physical injury to a person. *Bain*, 223 Mont. at 452, 726 P.2d at 1159.

10

¶29 We agree with the rationale of the Court in *Aetna* and conclude that the term "bodily injury," as defined in Farmers Union UM policy, is limited to physical injury to a person caused by an accident and does not include emotional and psychological injuries stemming therefrom. We thus hold that the District Court correctly concluded that the emotional injury suffered by Jacobsen, including his physical manifestations resulting therefrom, do not constitute "bodily injury" as that term is defined in the contract of insurance between Farmers Union and Jacobsen, and that Jacobsen's injuries are thus not compensable under the Farmers Union UM policy.

¶30 Given our conclusion that Jacobsen's injuries are not covered under his UM policy with Farmers Union, it is unnecessary for this Court to rule on whether the District Court correctly concluded that, under this Court's decision in *Wendell*, there existed an insufficient nexus between Jacobsen's injury and Keyser's ownership, maintenance or use of the uninsured motor vehicle.

¶31 The decision of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE