

DA 07-0346

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 239

CHARLES W. STIPE and DORIS E. STIPE,

      Plaintiffs and Appellants,

  v.

FIRST INTERSTATE BANK - POLSON,
f/k/a Security State Bank & Trust Company,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 02-122
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Quentin M. Rhoades, Sullivan, Tabaracci & Rhoades, P.C.,
Missoula, Montana

      For Appellees:

            Dean A. Stensland, Scott M. Stearns; Boone Karlberg, P.C.,
Missoula, Montana

Submitted on Briefs:  April 9, 2008

Decided:   July 8, 2008

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court

¶1     Charles W. Stipe and Doris E. Stipe (collectively, the Stipes) appeal from the District Court's order granting summary judgment to First Interstate Bank (FIB). We affirm.

¶2     We restate the issues as follows:

¶3     Did the District Court err when it granted FIB's summary judgment motion on the claims the Stipes brought under § 81-8-303, MCA?

¶4     Did the District Court err when it granted FIB's summary judgment motion on the Stipes' punitive damages claim?

¶5     Did the District Court err when it denied the Stipes' request to amend their complaint?

## BACKGROUND

¶6     The Stipes run a Montana ranching business. Between 1986 and 1997, the Stipes borrowed money from FIB or its predecessor, Security State Bank. The Stipes pledged their livestock as part of the collateral for the loans. After the Stipes defaulted on their loans, FIB took steps to repossess the Stipes' cattle. The Stipes then sought bankruptcy protection. Because the Stipes lacked sufficient resources to care for the cattle, the Bankruptcy court granted FIB relief from the automatic bankruptcy stay, which allowed FIB to pursue non-bankruptcy remedies to repossess the cattle.

¶7     FIB filed a complaint with the District Court to obtain possession of the livestock collateral. The District Court issued an order on March 26, 2002, authorizing FIB to

2

immediately enter the Stipe ranch and take possession of the livestock collateral. The court order required that the Stipes cooperate with the repossession and authorized FIB to use law enforcement if necessary to repossess the livestock. On March 28, 2002, FIB and the sheriff attempted to repossess livestock from the Stipe ranch. The timing of the repossession coincided with the Stipes' annual bull sale, which took place on March 29, 2002. The District Court issued a temporary restraining order that halted the repossession, and FIB resumed repossession on April 1, 2002. FIB sold the repossessed livestock collateral to satisfy the debt.

¶8 The Stipes sued FIB based on events relating to the livestock repossession. The Stipes based several of their claims on FIB's failure to file a notice of satisfaction of the security agreement until April 30, 2003. The Stipes alleged that FIB willfully or negligently failed to file a notice of satisfaction of the security agreement after FIB disposed of the cattle, in violation of § 81-8-303, MCA. The Stipes also brought a negligence per se claim based on the alleged violation of § 81-8-303, MCA. The Stipes further alleged that FIB had acted with actual malice, entitling the Stipes to punitive damages. The Stipes later filed a motion to amend their first amended complaint to claim intentional interference with prospective economic advantage. The District Court denied the Stipes' motion to amend.

¶9 In a ruling on several summary judgment motions, the District Court dismissed all the claims contained in Stipes' first amended complaint. The District Court certified its summary judgment orders as final. The Stipes now appeal.

**STANDARD OF REVIEW**

¶10    We review de novo a district court's grant or denial of summary judgment, applying the same criteria as the district courts. *Jacobsen v. Farmers Union Mut. Ins. Co.*, 2004 MT 72, ¶ 8, 320 Mont. 375, ¶ 8, 87 P.3d 995, ¶ 8.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file," together with any affidavits demonstrate that no genuine issue exists as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law.  M. R. Civ. P. 56(c).  We view the evidence in the light most favorable to the party opposing summary judgment, and we draw all reasonable inferences in favor of the party opposing summary judgment.  *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 22, 297 Mont. 336, ¶ 22, 993 P.2d 11, ¶ 22.  We review for abuse of discretion a district court's ruling on a motion to amend the pleadings.  *Porter v. Galarneau*, 275 Mont. 174, 188, 911 P.2d 1143, 1151-52 (1996).

**DISCUSSION**

¶11    **I      Did the District Court err when it granted FIB's summary judgment motion on the claims the Stipes brought under § 81-8-303, MCA?**

¶12    The District Court determined that FIB had no obligation to file a notice of satisfaction because the security agreements had never been satisfied.  The District Court specifically noted that FIB had received sworn statements that "put FIB on notice" that the Stipes had failed to satisfy their security agreements.  The court further stated that the

4

Stipes had failed to present any authority that § 81-3-303, MCA, provided a private right of action.

¶13 The Stipes argue that the District Court erred when it determined that no private right of action existed for violations of § 81-8-303, MCA, and they assert that whether the security agreements were satisfied constitutes a disputed question of fact. The Stipes maintain that they possessed a private right of action because they properly pled a claim of negligence per se. The Stipes also assert that the District Court erred when it required them to present authority that a private right of action exists under § 81-8-303, MCA. According to the Stipes, establishing a private right of action is not an element of negligence per se, and thus, any challenges to their claims based on "no private right of action" should have been pled as affirmative defenses. The Stipes maintain that FIB did not plead this affirmative defense and argue that the defense consequently was waived. Thus, the Stipes assert that the District Court's determination that no private right of action existed under § 81-8-303, MCA, violated their due process rights because FIB failed to argue "no private right of action."

¶14 A plaintiff must establish five elements to bring a negligence per se claim: (1) that the defendant violated a particular statute; (2) that the statute was enacted to protect a specific class of persons; (3) that the plaintiff is a member of the class; (4) that the plaintiff's injury is the kind of injury that the statute was enacted to prevent; and (5) that the statute was intended to regulate members of the defendant's class. *Massee v. Thompson*, 2004 MT 121, ¶ 30, 321 Mont. 210, ¶ 30, 90 P.3d 394, ¶ 30. If the plaintiff

5

proves these elements, a defendant is negligent as a matter of law. *Estate of Schwabe v. Custer's Inn*, 2000 MT 325, ¶ 25, 303 Mont. 15, ¶ 25, 15 P.3d 903, ¶ 25, *overruled on other grounds*, *Giambra v. Kelsey*, 2007 MT 158, 338 Mont. 19, 162 P.3d 134. A negligence per se theory, however, does not relieve a plaintiff from proving causation and damages to establish liability, and a plaintiff's claim fails as a matter of law if the defendant's actions did not cause the alleged damages. *Estate of Schwabe*, ¶ 27. Similarly, a claim fails as a matter of law if the plaintiff fails to establish the material elements of the claim, including damages. *See Kiamas v. Mon-Kota, Inc.*, 196 Mont. 357, 362-63, 639 P.2d 1155, 1158 (1982) (summary judgment appropriate when plaintiff fails to establish the elements of negligence).

¶15 The Stipes claim that FIB violated § 81-8-303, MCA, when it failed to immediately file a notice of satisfaction after FIB sold the cattle that it had repossessed. Section 81-8-303, MCA, requires a secured party, who files notices of security agreements, to "file notices of satisfaction of the security agreements with the department [of livestock] immediately upon the satisfaction of the security agreement." According to the Stipes, FIB's violation of § 81-8-303, MCA, amounts to negligence per se. The Stipes allege that they were injured because the failure of FIB to file a notice of satisfaction interfered with the Stipes' future business. Specifically, the Stipes "could not sell the cattle 'free and clear' of FIB's slanderous lien claim, and they [the Stipes] were deprived of opportunities to improve their operation, and to trim it down to a profitable and manageable size." The Stipes further claim that FIB's failure to file a notice of

satisfaction prevented the Stipes from selling their cattle "until after market prices had collapsed due to the mad cow disease."

¶16 After viewing the evidence in the light most favorable to the Stipes and drawing all reasonable inferences in their favor, we conclude that the District Court did not err in granting summary judgment. *Oliver*, ¶ 22. Even if we assume that the Stipes are entitled to a private right of action under § 81-8-303, MCA, and that they have satisfied the elements of negligence per se, we fail to see how the Stipes have been damaged. Nothing prevented the Stipes' cattle from being sold: after FIB repossessed the Stipes' cattle, FIB sold them to a Livestock Broker at the Missoula Livestock Auction; the Broker then sold them to buyers from Colorado and Kansas; and the Stipes then repurchased the cattle from those buyers.

¶17 The Stipes claim of damages based on their inability to sell the cattle "free and clear" is similarly without merit. The Stipes first learned that FIB had filed no notice of satisfaction after the Stipes sold two animals in Missoula. Following the sale, the Livestock Broker contacted Charles Stipe and informed him that FIB had a lien notice on the cattle and that the Missoula Livestock Auction would have to include FIB's name on any check it issued to the Stipes. Charles Stipe told the Livestock Broker to "hold the check" because he did not want FIB's name included on the check. The Stipes were not, however, prevented from selling the animals. On the contrary, the sale proceeded and the Livestock Broker held the proceeds from the sale of the Stipes' cattle in a trust account, rather than issuing a check containing the Stipes' names and FIB's name. Charles Stipe

7

testified that neither he nor anyone on his behalf ever contacted FIB to ask if they would sign off on the check so that the Stipes could use the proceeds. Instead, the Stipes continued to sell animals through the Missoula Livestock Auction and the Livestock Broker continued to place the proceeds from the Stipes' sales in a trust account.

¶18 Charles Stipe also testified that the Stipes conducted "private treaty sales" in spite of FIB's lien. After FIB's counsel clarified that FIB still had a lien on the Stipes cattle, the following exchange occurred during Charles Stipe's deposition:

> Q: So I assume that every check that got cut at the 2003 bull sale had First Interstate Bank's name on it?
>
> A: No, sir. We seen to that.
>
> Q: What's that?
>
> A: We seen to that that it wasn't on there.
>
> Q: So you had a hand in making sure that First Interstate Bank's name didn't get on the check even though they still had a security interest?
>
> A: Yes, sir.
>
> Q: So how about any of the private treaty sales? Were any of those checks in early 2003, was First Interstate Bank's name on any of those checks?
>
> A: No.

¶19 The Stipes do not argue that they sold their cattle and then were required to unjustly share the proceeds with FIB. Rather, the Stipes argue that they were damaged because FIB's lien prevented them from selling their cattle "free and clear" or until after the market price fell due to circumstances related to mad cow disease. Charles Stipe's sworn testimony contradicts their claim for damages.

8

¶20 The Stipes also claim that they were deprived of opportunities to trim down their operation to a profitable and manageable size. Charles Stipe's deposition, however, establishes that FIB's lien did not prevent the Stipes from selling their cattle through livestock auctions and through private treaty sales. Moreover, though Charles Stipe claimed that he wanted to sell approximately 200 cows in the first part of 2003, his testimony established that he did not negotiate with prospective buyers and that he never signed a contract to sell the cows. Charles Stipe further testified that he did not contact FIB to see if they would release its lien on the 200 cows, and he testified that FIB had no way of knowing that he planned to sell 200 cows. We conclude that the Stipes have failed to establish that they suffered any damages or that any of their alleged damages were caused by FIB's conduct. Thus, we conclude that the Stipes' claims fail as a matter of law and that the District Court did not err when it granted summary judgment to FIB.

¶21 **II    Did the District Court err when it granted FIB's summary judgment motion on the Stipes' punitive damages claim?**

¶22 The Stipes maintain that they properly pled a claim for negligence per se for a violation of § 81-8-303, MCA. The Stipes argue that FIB violated the statute intentionally and with malice, and thus, punitive damages were properly left for a jury to decide. Accordingly, the Stipes assert that the District Court erred when it granted FIB's summary judgment motion on the Stipes' punitive damages claim.

¶23 A jury question of punitive damages arises when one intentionally or recklessly violates a statute designed to protect another's substantial interests from a high degree of

9

risk. *Owens v. Parker Drilling Co.*, 207 Mont. 446, 452, 676 P.2d 162, 165 (1984). Punitive damages, however, are unavailable without a showing of actual damages. Section 27-1-220, MCA; *Paulson v. Kustom Enterprises, Inc.*, 157 Mont. 188, 201-02, 483 P.2d 708, 715-16 (1971). Actual damages are a predicate for punitive damages, and an individual with no real or actual damages has no right of action for punitive damages. *Paulson*, 157 Mont. at 202, 483 P.2d at 716.

¶24 As discussed under Issue I, the Stipes have failed to establish that they suffered any actual damages. Thus, we conclude that the District Court did not err when it granted FIB's summary judgment motion as to the Stipes' punitive damages claim.

¶25 **III Did the District Court err when it denied the Stipes' request to amend their complaint?**

¶26 The Stipes argue that the District Court erred when it denied their request to amend their complaint to raise a claim of intentional interference with prospective economic advantage on September 6, 2006. The Stipes primary grievance stems from their perception that the District Court's December 29, 2006 summary judgment ruling, which largely adopted FIB's proposed order, effectively allowed FIB to amend its answer to include an additional affirmative defense. The Stipes argue that "what is good for the goose should be good for the gander" and claim that the court should have allowed them to amend their complaint. (Citations and internal quotation marks omitted.) We reject the Stipes' characterization of the court's summary judgment ruling, and we review the court's order denying the Stipes' motion to amend for abuse of discretion.

10

¶27 A party may amend its pleadings "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." M. R. Civ. P. 15(a). The district court has discretion to grant or deny a motion to amend, and we will not disturb a court's ruling absent an abuse of discretion. *Porter*, 275 Mont. at 188, 911 P.2d at 1151-52. A court abuses its discretion when it acts arbitrarily, without employing conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *Kuhr v. City of Billings,* 2007 MT 201, ¶ 14, 338 Mont. 402, ¶ 14, 168 P.3d 615, ¶ 14. For example, a district court's "outright refusal" to grant a motion to amend with no justifying reasons amounts to an abuse of discretion. *Prentice Lumber Company, Inc. v. Hukill*, 161 Mont. 8, 17-18, 504 P.2d 277, 282 (1972) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

¶28 Our review of the District Court's order and the record convinces us that the District Court did not abuse its discretion when it denied the Stipes' motion to amend their complaint. The court's order set forth several reasons for denying the Stipes' motion. The District Court noted that the parties had stipulated to a scheduling order that foreclosed changes absent good cause. The District Court concluded that the Stipes had failed to show good cause and that their motion was untimely. The court noted that the Stipes had filed no motions to amend the scheduling order and that they filed their motion 164 days after the deadline to amend pleadings had passed. Additionally, the court observed that the Stipes filed their motion to amend four days before the close of discovery. The court also noted that the Stipes' counsel had been aware of the claim for

11

at least four years because he had filed the same claim against FIB when representing the Stipes' family members. The District Court justified its decision to deny the Stipes' motion, and we cannot say that the District Court acted arbitrarily, without employing conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice when it denied the Stipes' motion to amend the complaint. *Kuhr*, ¶ 14.

¶29 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JOHN WARNER
/S/ BRIAN MORRIS

Justice Patricia O. Cotter concurs.

¶30 I concur in the Court's decision. I write separately to state that even if there was an arguable question of fact of whether the Stipes suffered any damages as a result of FIB's conduct, their claim would still be barred because they cannot establish the five elements necessary to support a negligence per se claim. Specifically, they cannot satisfy the second through the fourth elements of the negligence per se test as set forth in ¶ 14 of the Opinion—i.e., that the statute, § 81-8-303, MCA, was enacted to protect a specific

class of persons, of which they are a member, and that their injury is the kind of injury the statute was enacted to prevent.

¶31 Section 81-8-303, MCA, is part of a chapter in the Montana Code which addresses "Security Interests Concerning Livestock." This chapter is intended to protect the central livestock market and the Department of Livestock. Section 81-8-301(1), MCA, the opening statute in the chapter, sets forth the obligation of the Department of Livestock with respect to notices of security agreements and satisfaction, among others. It specifically provides that a livestock market to which livestock is shipped may not be held liable to a secured party for the proceeds of livestock sold through the market by a debtor, unless notice of the security agreement is properly filed. A similar protection is extended to the Department of Livestock. Similarly, § 81-8-305, MCA, provides that the Department of Livestock is not responsible or liable to either a debtor or a secured party for the collection or payment of any money due to the holder of a security agreement covering livestock, if it carries out its obligations in good faith. Section 81-8-303, MCA, upon which the Stipes rely for their negligence per se claim, directs secured parties to file notices of satisfaction of security agreements with the Department of Livestock. It is clear from the context of this statute and the provisions of the other statutes in the chapter, that this obligation is intended for the protection of the livestock market and the Department of Livestock, and not for the protection of private parties engaged in livestock sales. This being the case, the Stipes simply cannot establish that the statute was enacted to protect them, nor can they establish that their injury is the kind of injury

13

the statute was enacted to prevent. On this basis as well, I therefore join the Court in concluding that the District Court did not err in entering summary judgment on the Stipes' negligence per se claims.

/S/ PATRICIA COTTER

Justice Jim Rice joins in the Concurrence of Justice Patricia O. Cotter.

/S/ JIM RICE