TRAVELERS CASUALTY AND
SURETY COMPANY,
Plaintiff–Appellant,

v.

WAUSAU UNDERWRITERS
INSURANCE COMPANY,
Defendant–Appellee.

Columbia Falls Aluminum Company,
LLC, et al., Plaintiffs–
Appellants,

v.

Wausau Underwriters Insurance
Company, et al., Defendants–
Appellees.

Nos. 03–35729, 03–35862.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2005.

Decided April 28, 2005.

Before: MCKAY,* O'SCANNLAIN, and BEA, Circuit Judges.

### MEMORANDUM **

In these diversity cases, consolidated for appeal, Plaintiffs–Appellants Columbia Falls Aluminum Company, Brack Duker, and Jerome Broussard (collectively "CFAC") and Travelers Casualty and Surety Company ("Travelers") appeal the district court's grant of judgment on the pleadings to Defendants–Appellees Wausau Underwriters Insurance Company and Employers Insurance of Wausau (collectively "Wausau"). Appellants allege that Wausau had a duty to defend and indemnify CFAC in five lawsuits brought against CFAC by its employees. At issue is the interpretation of the insurance contracts entered into by CFAC and Wausau.

The district court opinion provides a comprehensive history of the dispute which will not be repeated in detail here. In 1985, CFAC implemented a profitsharing plan which provided:

> The Board of Directors [of CFAC] will determine each year the amount of profits available for distribution. Fifty percent of the distributable profits as determined by the parent company will be distributed to employees.

Calvin J. Stacey, Stacey, Walen & Funyak, Billings, MT, for Plaintiff–Appellant.

Lawrence G. Lossing, Lossing & Elston, San Francisco, CA, and James L. Jones, Esq., Holland & Hart LLP, Billings, MT, for Defendant–Appellee.

Rec., Vol. III, No. 5, at 52; No. 6, at 68. Pursuant to this profitsharing plan, CFAC employees agreed to a reduction in their base wages in exchange for "a substantial portion of the profits" when business was good. *Id.*, No. 5, at 52.

---

* The Honorable Monroe G. McKay, Senior United States Circuit Judge for the Tenth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

Beginning in 1986 and continuing at all relevant times, Travelers issued to CFAC a Fiduciary Responsibility Insurance Policy affording coverage for various "Wrongful Acts," as defined, arising out of and relating to the CFAC profitsharing plans. Beginning in 1987 and continuing through 1994, Wausau Underwriters Insurance Company and CFAC entered into contracts of insurance for primary commercial general liability coverage. The primary insurance contracts contained a specific "Employee Benefits Liability Insurance Endorsement." From 1989 through 1994, a related insurer, Employers Insurance of Wausau, insured CFAC under a series of excess liability policies which did not contain a specific employee benefits liability endorsement.

In 1990, 1992, and 1994, five lawsuits were filed in Montana state and federal courts by or on behalf of current and former CFAC employees seeking recovery of profitsharing monies that CFAC allegedly withheld by failing to adequately fund its 401(k) ERISA plan. CFAC tendered and received a defense for the underlying actions with respect to the Travelers' policies. CFAC's tender of indemnity and defense to Wausau was refused because the underlying suits did not fall within the scope of the Employee Benefit Liability endorsement.

CFAC and Travelers, separately, filed suit against Wausau alleging coverage under the policies. Wausau moved for judgment on the pleadings in both actions. The district court granted the motions, holding that Wausau "had no duty to indemnify ... or defend," *id.*, No. 12, at 30, because it was "clear" that "the claims brought by the Underlying Actions do not

relate to an employee benefits program but to a labor compensation agreement," *id.* at 27. CFAC and Travelers appealed.

A dismissal pursuant to Federal Rule of Civil Procedure 12(c) is reviewed *de novo*. *Alaska v. United States*, 201 F.3d 1154, 1160 (9th Cir.2000); *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir.1996).

We first note that the district court correctly treated the factual allegations in the underlying complaints as true in deciding whether Wausau had a duty to defend CFAC. Montana[1] law provides that, in deciding whether an insurer has a duty to defend, the court looks to the factual allegations of the complaint to determine if there is coverage under the policy. *Burns v. Underwriters Adjusting Co.*, 234 Mont. 508, 765 P.2d 712, 713 (1988).

We next turn to whether Wausau was obligated to defend and indemnify CFAC in the underlying lawsuits. Each of the primary insurance contracts issued by Wausau to CFAC includes the following "Employee Benefits Liability" endorsement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of loss sustained by any of your employees or former employees ... arising out of any act, error or omission that occurs in the "administration" of your "employee benefits program." We will have the right and duty to defend any "suit" against you seeking those damages, even if any of the allegations of the "suit" are groundless, false, or fraudulent.

Rec., Vol. I, No. 1, at 36, 79, 133, 188, 240, 280; Vol. II, No. 2, at 326.[2] As such, the

---

1. It is undisputed that Montana law applies in this diversity action.

2. The specific language of the "Employee Benefits Liability" endorsement, and the definitions relating to the endorsement, changed slightly during the period of coverage. *See* Aple. Br. at 10. However, the provisions in the endorsement that are relevant to this ap-

policies provided that coverage was afforded only if there was an act, error, or omission in the administration of an employee benefits program. *See id.* Therefore, the first question is whether the labor contract's profitsharing component can be viewed as part of an employee benefits program. If it can, the question is whether CFAC's actions were administrative in nature.

The language of the policies specifically includes profitsharing plans. Pursuant to the policies, "Employee Benefits Program" is defined as

> any of the following employee benefit plans and programs maintained for the benefit of your employees or former employees:
>
> (1) Group life insurance, group accident and health insurance, employee pension plans, employee stock subscription plans, *profitsharing plans,* workers compensation, unemployment compensation, social security and disability benefits insurance.

*Id.,* Vol. I, No. 1, at 38, 80, 136, 192, 244, 283; Vol. II, No. 2, at 329 (emphasis added). The policies' definition of an employee benefits program is broad, specifically listing profitsharing plans as included. There is no additional language excluding certain types of profitsharing plans. Therefore, the policies are unambiguous in their inclusion of profitsharing plans.

Even if there were ambiguity in the policies' language, Montana follows the rule that ambiguity in a policy of insurance is construed against the insurer. *Jacobsen v. Farmers Union Mut. Ins. Co.,* 320 Mont. 375, 87 P.3d 995, 998 (2004). Wausau failed to write the employee benefits

program provision narrowly to exclude certain kinds of profitsharing agreements. Where Wausau included the term "profitsharing plans" within its definition of employee benefits program but failed to further restrict that term, and where the employees in the underlying actions explicitly used the very words penned by Wausau in its policies,[3] we hold that CFAC's profitsharing plan was within the scope of the policies.

■ We must next address whether the district court erred in determining that the acts alleged in the underlying suits did not involve "Administration," which is defined as follows:

> (1) Providing interpretations and giving counsel to your employees regarding your "employee benefits program;"
>
> (2) Handling records in connection with your "employee benefits program;"
>
> (3) Effecting the enrollment, termination or cancellation of employees under your "employee benefits program;"
>
> But does not include any act, error or omission of any person acting in the capacity of a fiduciary under the Employee Retirement Income Security Act of 1974, including any amendments to and regulations relating to that act.

Rec., Vol. I, No. 1, at 38, 80, 136, 191–92, 243–44, 282–83; Vol. II, No. 2, at 328–29. This definition contemplates administrative and ministerial actions. It does not include discretionary, decision-making activities. CFAC admitted that "[t]he parties' dispute ... arose out of a fundamental disagreement as to how CFAC, in the exercise of the exclusive jurisdiction it had

---

peal remained consistent throughout the period. Rec., Vol. I, No. 1, at 36, 38, 79–80, 133, 136, 188, 191–92, 240, 243–44, 280, 282–83; Vol. II, No. 2, at 326, 328–29.

**3.** The district court opinion provides a detailed analysis of the underlying lawsuits which are also found in the record in their entirety. Rec., Vol. III, No. 12, at 4–15; Vol. II, No. 2, at 499–574.

reserved to itself, would determine what constituted 'distributable profits.'" Aplt. Br. at 29.

The wrongful acts alleged in the underlying complaints involve the extent and calculation of profits—they do not involve giving counsel to employees with respect to those benefits. By CFAC's own admission, the claims involve CFAC's *discretionary* action; therefore, the acts complained of were not merely administrative. *See id.* CFAC's exercise of discretion in failing to pay into the program is not included within the definition of "Administration" and is therefore beyond the scope of the policies.[4] We agree with the district court that

> [t]here is simply no principled way to shoehorn a claim alleging failure to fund a profit-sharing program into an insurance provision covering "providing interpretations," "giving counsel," "handling records," or "effecting the enrollment, termination or cancellation or employees" in an employee benefits program. It is plain on the face of the [employees'] Complaints that [Wausau] did not insure

the types of claims alleged in the Underlying Actions.

Rec., Vol. III, No. 12, at 30.

Appellants' other arguments on appeal have no merit. First, the district court did not take judicial notice of interlocutory findings in the underlying actions. It expressly stated that it did not do so because such findings were unnecessary to its determination. Additionally, because there is no coverage under the policies, the issue of whether Appellants asked for damages is irrelevant. Similarly, because there is no coverage under the primary policies, Appellants' request for reformation of the excess insurance policies is also irrelevant.

AFFIRMED.

---

4. Appellants' argument that only ERISA fiduciary actions are excluded misses the mark. This argument ignores the plain language of the policies that only acts that are administrative in nature are *included*.